# DeHaven *versus* Kensington National Bank.

1. A man dressed as a police officer told the cashier in presence of a watchman of the bank, that he had been directed by the lieutenant of the police to warn him that there were "suspicious characters about;" the cashier told the watchman to admit no one, but he made no inquiry of the lieutenant. After the bank was closed—there then being another watchman there—the first was called from outside by name; he opened the door; a man dressed as a policeman and two others in ordinary dress came in; they overpowered the watchmen, took securities, &c., from the vault, including plaintiff's, deposited for safe-keeping and kept as the bank's securities. *Held*, the bank being a voluntary bailee without reward, the evidence was not sufficient to charge them with negligence.

2. Whether a national bank can take securities on deposit for safe-keeping, not decided.

[DeHaven *v.* Kensington National Bank.]

February 11th 1876.    Before AGNEW, C. J., SHARSWOOD, MER-
CUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia* : Of January Term
1874, No. 355.

This was an action on the case by George DeHaven against the
Kensington National Bank.    The bank had been originally incor-
porated by the Commonwealth of Pennsylvania, and afterwards,
under the Act of Congress of June 3d 1864, and the Pennsylvania
enabling Act of August 22d 1864, became a national bank.    The
declaration contained three counts :—

1. That defendants were a banking corporation and " as such
had been used to receive and take into their charge money and
securities for the loan thereof of divers customers of and dealing
with the defendants, to be safely kept and securely kept and delivered
up to such customers on request," that the plaintiff had been for
a long time a customer, and had dealt with defendants, and on the
2d of February 1871, had delivered to them eight bonds of the
United States, altogether of the value of $9000, to be safely kept
and delivered to plaintiff on request, and averred that the defend-
ants did not keep the bonds nor deliver them when requested, but
" so negligently conducted themselves that by their default of
ordinary care the bonds were wholly lost to the defendant."

The second count was that in consideration that the plaintiff
would deposit money and securities with the bank, they agreed to
keep them safely, to be delivered on request; that the plaintiff
delivered the bonds before mentioned to them; that they were lost
to plaintiff by defendants' negligence.

The third count was in trover.

The case was tried January 15th 1874, before Thayer, J.

The plaintiff testified :—

"I kept an account for fifteen or twenty years in defendant's
bank; I deposited six $1000 bonds and two $500 bonds in the bank;
they were in a tin box, with a lock on it; the key was on the box,
tied on outside, under orders of the bank; Mr. Ovington, a clerk
of the bank, cut off the coupons for me; sometimes McConnell,
the cashier. * * * I went to the bank; they told me the bank
was robbed; I had no doubt it was robbed from what I saw; * * *
the bank had never loaned me anything on these securities."

Being cross-examined, he said : " I thought the bonds were safer
in the bank than in my own house; * * * the box was left there
for safe custody; it was my box ; kept in a place six or eight feet
square, built of brick; it had iron doors; when I went to get the
coupons cut off, the man would go into this place and get the box;
I saw my own box there, broken open. * * *"

The cashier testified: "The bank was robbed on the night of 2d
February 1871; * * * a man came into the bank, and the watch-
man sent him back to me; he was dressed in a policeman's uniform,

[DeHaven *v.* Kensington National Bank.]

\* \* \* he said the lieutenant had sent him down to say there were suspicious characters about; \* \* \* it was a few minutes before 5 P. M.; I locked up the vault, &c.; and said to the watchman, 'You must be very careful; dont't admit any one into the bank;' then I went home; \* \* \* I left the watchman at the bank; he was the only person there at that time; another watchman should have come before 6 o'clock; I did not stop to see the lieutenant of police on my way home.''

Being cross-examined, he said: ''The place in which the box was kept was the vault of the bank; \* \* \* where the specie used to be kept; I kept the keys of the vault; the vault was carefully locked up on the night of the robbery and carried home; it was opened by cutting off the outer door, and wrenching off the inner door by great violence; two watchman were kept inside the bank at night; everything that night was the same as for years past; there was an iron chest in the vault; there was in the vault another box, walnut box, containing the securities of the bank, notes and securities which the bank held; that lay in the vault in same way as plaintiff's box; it had not been opened, although the key was in it; there was also about twenty-five tin boxes like plaintiff's; I had one of my own; all in this vault; my box was robbed at same time, of valuable bonds and money; the bank had no other place in which it could have deposited the boxes which was more secure than the vault; \* \* \* I told the watchman to be careful and not to permit any one to come in the bank; the watchmen were armed each with a pair of pistols and a revolver besides; and Murphy had also a cutlass, and a rifle, and a large horse pistol; they had ammunition; \* \* \* Murphy had been there over six years; Holmes over two years; \* \* \* inquiry was made by the board, which satisfied them that they were proper persons; we never had any reason to suppose to the contrary. \* \* \* ''

John Holmes, testified: ''I was watchman of the bank on 2d February 1871; I was at bank at 4½ P. M., when a rap came at the door; I asked, 'Who was there?' the reply was, ''Is that you Mr. Holmes?' I replied, 'Yes;' he said, 'Open the door, I have something important to tell you;' as some of the bank officers were there, I opened the door and peeped out, and saw a man dressed in police uniform; he said, 'Mr. Holmes, I came down from the station-house, and was sent by Lieutenant Sharp to tell you that he thinks the bank may be attacked to-night.'' There was another man with him; he was in citizen's clothes; the policeman said, 'Are you alone?' I said, 'The cashier is in the back room; I then let him in, and he went back to the cashier; he remained there a very short time and then went out; \* \* \* the cashier said, 'If any one tries to break in, shoot them down;'' Murphy came about 6 o'clock; \* \* \* Murphy went up stairs; \* \* \* I sat down by the vault door, when a rap came at the door; Murphy

31 P. F. SMITH—7

[DeHaven *v.* Kensington National Bank.]

ran to the door and hallooed, 'Who's there?' the man outside said, 'Is that you Mr. Holmes;' Murphy said, 'No; but he's here," and then he opened the door; then a man in police uniform came in with two others in citizen's clothes; Murphy then shut the door; they sat down and asked us questions; how the bank was secured, &c.; and about fire-arms, &c.; we told them we were very well prepared; we always kept two pistols loaded on the table; one of the men said to Murphy, 'We saw two men up by the corner as we came along; we think they are two of the men who are going to do this job; will you go out and look at them?' Murphy went out with the man, and I shut the door; the policeman then asked for water; * * * I started to get it; they both followed me to the back door, and while I was drawing the glass of water, they clasped my arms; they then drew a rope over my head; * * * secured me with hand-cuffs, and tied my limbs, and let me lie on the floor; * * * one of them stood over me and held a pistol to my head; * * * in about twenty minutes Murphy came in, and the policeman gave him a clinch; I heard the tussel at the door; they secured Murphy and carried him back to the cashier's room; they then carried me there too; Murphy had the key with him and opened the door himself; each of us had a key; I then heard them operating on the vault; a man stood over me with a pistol; there was some hard pounding before they got into the vault; * * * our instructions were to let nobody in, but were ordered to communicate from the up stairs with any one who came. * * *"

The other watchman testified substantially in the same manner.

Plaintiff having closed, the court directed a nonsuit; this was assigned for error on the removal of the record to the Supreme Court, by writ of error.

*D. W. Sellers*, for plaintiff in error.—The watchman in disregard of the instruction of his principal, and being misled by the conduct of the cashier, did admit three persons who stole plaintiff's securities. If the cashier had called upon the lieutenant of police, the robbery would have been discovered; and if the servant had obeyed instructions, the actual robbery would not have occurred. The bank would not be liable for the felony of its servants; but they are liable for their gross negligence. Whether the evidence submitted proved that, was wholly for the jury: Bank *v.* Smith, 12 P. F. Smith 54; Scott *v.* Bank, 22 Id. 471.

*A. D. Campbell* and *R. C. McMurtrie*, for defendants in error.—There is a distinction between the liability of a bailee for hire and that of a mere depositary or gratuitous bailee: Bank *v.* Smith, 12 P. F. Smith 54; Scott *v.* Bank, 22 Id. 471; Lance *v.* Greiner, 3 Id. 204. A gratuitous bailee is liable only for *gross* negligence; the failure to use that degree of care which would be exercised by

[DeHaven v. Kensington National Bank.]

any man of ordinary common sense and prudence: Coggs v. Bernard, Ld. Raym. 909; 1 Sm. Lead. Cas., part 1, 369 (*283), and notes; Finucane v. Small, 1 Espinasse 315; Doorman v. Jenkins, 2 Ad. & El. 256; Tracy v. Wood, 3 Mason 132; Knowles v. Railroad Co., 38 Maine 55; Foster v. Essex Bank, 17 Mass. 479; Schmidt v. Blood, 9 Wend. 268; Beardslee v. Richardson, 11 Id. 25; Edson v. Weston, 7 Cowen 278; Monteith v. Bissell's Admr., Wright's Ohio R. 411; Sodowsky v. McFarland, 3 Dana (Ky.) 204; Wiser v. Chesley, 53 Mo. 547; Stanton v. Bell, 2 Hawks 145; Tompkins v. Saltmarsh, 14 S. & R. 275; Lloyd v. The West Branch Bank, 3 Harris 172. The burden of proof is upon the plaintiff to show a loss resulting from such degree of negligence as would render the depositary liable, and mere proof of loss is not evidence of such negligence: Giblin v. McMullen, Law Rep. 2 Privy Council 317; Smith v. Bank, 99 Mass. 611; Pitlock v. Wells, Fargo & Co., 109 Id. 452; Knowles v. Railroad Co., 38 Maine 60. The scintilla doctrine has long since been exploded: Ryder v. Wombwell, Law Rep. 4 Exch. 31; Jewell v. Parr, 13 C. B. 916; Toomey v. London & Brighton Railway Co., 3 C. B. N. S. 150; Wheelton v. Hardisty, 8 E. & B. 262; Improvement Company v. Munson, 14 Wall. 442; Welfare v. Brighton Railway Co., Law Rep. 4 Q. B. 692; Searle v. Laverick, Law Rep. 9 Q. B. 122. The court should give imperative instructions to the jury where the facts are undisputed: Malson v. Fry, 1 Watts 433; Koons v. Steele, 7 Harris 210; Kerr v. Wright, 1 Wright 196; Railroad Co. v. Evans, 3 P. F. Smith 250. The question of negligence is one of mingled law and fact, to be decided as a question of law by the court when the facts are undisputed or conclusively proved: Gagg v. Vetter, 41 Ind. 228; Green v. Hollingsworth, 5 Dana (Ky.) 173; Railway Co. v. Butts, 7 Kans. 308; Trow v. Railroad Co., 24 Verm. (1 Deane) 487; Railroad Co. v. Heileman, 13 Wright 60; Railroad Co. v. Beale, 23 P. F. Smith 504; Railroad Co. v. McClurg, 6 Id. 294; Railroad Co. v. Andrews, 14 Am. L. Reg. N. S. 566; Shipley's Case, 31 Md. 270; Leaming v. Wise, 23 P. F. Smith 176; Nunez v. Dautel, 19 Wall. 560; Express Co. v. Wile, 14 P. F. Smith 201; Phila. & Reading Railroad Co. v. Yerger, 23 Id. 121; Adams Express Co. v. Sharpless, 27 Id. 516. Gross negligence cannot be predicated of a designed act except where so much skill is contracted for as ought to prevent the mistake: Shiells v. Blackburne, 1 H. Blackst. 158; Moore v. Mourgue, Cowp. 480; Kohl v. Love, 8 Vroom 5. It is at least a question how far a national bank is liable for the loss of valuables deposited with it for safe-keeping: Wiley v. Bank, 14 Am. L. Reg. N. S. 342; Weckler v. Bank, Id. 609; Fowler v. Scully, 22 P. F. Smith 456; Bank v. Bank, 7 Leg. Gaz. 134; Railway Co. v. Turner, Law Rep. 8 Ch. App. 149; In re Bank, Law Rep. 5 Id. 444.

[DeHaven *v.* Kensington National Bank.]

Judgment was entered in the Supreme Court, February 21st 1876,

PER CURIAM.—We discover no sufficient evidence in this case to charge a merely voluntary bailee, without reward, for a loss by robbery. Waiving the question of the want of power in a national bank to take bonds, &c., on a deposit for safe-keeping, the officers here took as much care of them as they did of the property of the bank. The robbery was effected by a most ingenious and unexpected device, calculated to succeed with the most careful of persons, and made successful by its very openness and apparent freedom from design. The cashier had no reason to suspect an attack on *his* bank, the message of the pseudo police officer being merely that there were suspicious persons about; that is, in the city. Hence his omission to call at the police precinct was no evidence of such carelessness as would charge the bank. He took all proper precautions. The nonsuit was properly granted.

Judgment affirmed.