**Heather BARR, Appellee**

v.

**Frank BARTOLO, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2007.

Filed June 15, 2007.

Graydon R. Brewer, Pittsburgh, for appellant.

Cathy D. Campbell, Beaver Falls, for appellee.

BEFORE: MUSMANNO, BOWES and JOHNSON, JJ.

OPINION BY BOWES, J.:

¶ 1 Frank Bartolo appeals from the May 26, 2006 Beaver County Common Pleas Court order granting the petition of Appellee, Heather Barr ("Mother"), for DNA testing in a support action. We are constrained to reverse.

¶ 2 The child in question, Angel Barr, was born December 1, 1989. The trial court summarized the long and convoluted procedural history dating back to 1992 as follows:

The procedural history in this case and in companion cases relating to the paternity and support of Angel commences in 1992 and requires a thorough review in order to place the matter in proper perspective. On September 4, 1992, the mother filed a complaint for support against her husband, Robert Barr (hereinafter "husband"), in the domestic relations division of the [C]ourt of [C]ommon [P]leas of Lawrence County, Pennsylvania, at No. 826 of 1992 DR. According to said complaint, the mother had separated from the husband on June 7, 1992, and was receiving public assistance in the form of cash in the amount of $305.00 per month and food stamps in the amount of $203.00 per month, for a total of $508.00 per month. Because the husband was a resident of Beaver County, the case was certified and ordered transferred to the domestic relations division of the [C]ourt of [C]ommon [P]leas of Beaver County on September 8, 1992. The Lawrence County complaint was received in Beaver County on September 10, 1992, and docketed as Case No. 664 DR 92. An agreed order of court was entered on October 16, 1992, effective September 4, 1992, by which the husband was directed to make payment in the amount of $560.00 per month plus $10.00 per month on the arrearages for the support of the mother and Angel. The husband executed said agreed order of court consenting to it being entered as an order.

By correspondence dated January 22, 1993, the Lawrence County Domestic Relations Division advised the Beaver County Domestic Relations Division that the mother's welfare case was discontinued as of January 13, 1993. The Beaver County Domestic Relations Division entered a suspension order dated February 2, 1993, suspending the agreed order of court dated October 16, 1992, subject to payment of existing arrearages in the amount of $2,800.00. On February 9, 1993, an amended suspension order was issued by which the amount of the arrearages was revised to $1,230.00. By order dated February 19, 1993, the husband's wages were subject to the withholding of $200.00 per month for payment of the support arrearages. Upon payment of all of the arrearages, a withholding removal order was entered on March 3, 1994. This case was thereafter closed in April, 1994.

On March 2, 1995, the mother filed a second complaint in support against the husband in the Beaver County Domestic

Relations Division at No. 146 DR 95. The husband denied paternity of Angel on April 5, 1995, and the court entered an order for blood testing on April 6, 1995. The mother did not inform the domestic relations division of the previous case which she filed against the husband in 1992 pursuant to which the husband executed a consent order to provide support for Angel. As a result of genetic testing, the husband was excluded as the biological father of Angel, resulting in a recommendation by the domestic relations division on May 15, 1995, that the mother's complaint in support be dismissed. When no further hearing was requested, said recommendation became a final order of court on June 23, 1995. A petition for rehearing was filed on January 12, 1996, on behalf of the mother by a representative of the public assistance office based upon the case of *Woy v. Woy,* 444 Pa.Super. 232, 663 A.2d 759 (1995),[1] decided by the [S]uperior [C]ourt on August 17, 1995. A recommendation was issued by the domestic relations division on April 15, 1996, that the mother's petition be dismissed as she was no longer receiving public assistance and did not wish to pursue support, which became a final order on May 2, 1996, since no request was made for further hearing. The action of the mother in not wanting to pursue the husband was done in spite of the fact that the mother had received correspondence from the solicitor for the domestic relations division dated November 21, 1995, indicating that she was required to pursue the husband in light of *Woy v. Woy, supra,* even though the husband was excluded as the biological father, because she and the husband had resided together and had sexual inter-

course both before and after the conception of Angel.

The mother filed a support complaint against [Appellant] with the Beaver County Domestic Relations Division at Case No. 81 PA 95 on March 2, 1995, the same day that she filed the support complaint against the husband at Case No. 146 DR 95 discussed above. A support conference was conducted on August 1, 1995. The domestic relations division on April 15, 1996, issued its recommendation to dismiss the action against [Appellant] on the basis of the [S]uperior [C]ourt decision in *Woy v. Woy, supra.* To this recommendation, the mother filed a request for a hearing *de novo* on April 22, 1996, which was scheduled before the court on August 1, 1996. A motion for continuance and request for discovery were presented to the court on behalf of the mother on August 1, 1996, and the hearing was rescheduled for August 29, 1996. As a result of the mother filing a praecipe to withdraw her request for a *de novo* hearing on August 23, 1996, the court entered a complaint dismissal order on August 28, 1996, in which the mother's complaint for support against [Appellant] was dismissed.

The mother filed the instant support action against [Appellant] on April 2, 2002. Following a conference in the domestic relations division, the court entered an order dated April 29, 2002, dismissing the case pursuant to *Woy v. Woy, supra.* The mother filed her request for a *de novo* hearing on May 10, 2002, in which she claimed that [Appellant] had paid support since the child's birth and provided furniture, toys, clothing and gifts on holidays and birthdays.

1. *Woy v. Woy, supra,* held that the mother therein did not rebut the presumption of paternity and denied the mother's acquaintance's petition to intervene seeking a blood test.

She further alleged that she had consented to the dismissal of the support action filed in 1995, because [Appellant] had agreed that he would continue to pay for the child's needs. [Appellant], according to the mother, stopped payments in 2001, which led her to file the instant complaint. The hearing *de novo* was scheduled for July 11, 2002, and was subsequently continued to September 12, 2002, per the request of [Appellant]. The parties appeared before the court on September 12, 2002, at which time no testimony was given by either party; however, counsel for both parties presented various facts and arguments to the court. Following said proceeding, the court requested that the parties submit a formal stipulated summary of the history of the above cases, which was provided on December 31, 2002. No further action in the present case occurred until October 19, 2004, when the mother presented her petition for DNA testing, which is presently before the court. An order was entered on November 16, 2004, issuing a rule upon [Appellant] returnable December 15, 2004, to show cause why the relief requested should not be granted. A hearing on the petition, as well as a hearing *de novo* on the mother's initial request for support, were both scheduled for January 14, 2005. [Appellant] filed his answer and new matter on December 15, 2004, and the mother filed her reply to new matter on January 4, 2005. The court, *sua sponte*, by order of November 24, 2004, rescheduled the hearing to February 25, 2005. By order dated December 9, 2004, the court, *sua sponte*, rescheduled the hearing to March 4, 2005. The mother filed a motion to continue on January 25, 2005, due to the unavailabili-

ty of her counsel, and the court continued the hearing to April 28, 2005. At the hearing on April 28, 2005, both parties presented testimony and evidence in support of their claims and were both represented by counsel. By order dated May 4, 2005, the court scheduled a resumption of the hearing for September 19, 2005, at which time the hearing was concluded. Both parties have presented trial briefs and the matter is ready for the court's disposition.

Trial Court Opinion, 1/20/06, at 1–6.

¶ 3 As noted, on January 20, 2006, the trial court granted Mother's motion for DNA testing to occur within thirty days. Appellant filed a motion for post-trial relief on February 2, 2006, which the trial court denied on February 14, 2006, pursuant to Pa.R.C.P.1930.2(a).[2] Also on February 2, 2006, Appellant filed a motion for stay or in the alternative, a motion to seal the test results pending appeal, which the court granted, and a motion for reconsideration, which the trial court also granted that day pending resolution of reconsideration. On May 26, 2006, the trial court filed a supplemental opinion and order again directing the parties to submit to paternity testing. Thereafter, on June 22, 2006, the trial court granted Appellant's stay of the May 26, 2006 order requiring the parties and Angel to appear for DNA testing. Appellant filed the instant appeal of the May 26, 2006 order on June 23, 2006.

¶ 4 This appeal is properly before us. We stated in *Buccieri v. Campagna*, 889 A.2d 1220, 1220 n. 1 (Pa.Super.2005), "This Court accepts immediate appeals from orders directing or denying genetic testing to determine paternity. *See generally T.L.F. v. D.W.T.*, 796 A.2d 358 (Pa.Su-

---

**2.** Rule 1930.2(a) provides that a motion for post-trial relief may not be filed in domestic    relations matters.

per.2002)." *See also Jones v. Trojak*, 535 Pa. 95, 634 A.2d 201 (1993) (appeal from order directing or denying genetic testing is permitted as interlocutory appeal as of right pursuant to Pa.R.A.P. 311(a)(9)). Our standard of review is abuse of discretion. We have stated:

> An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence.... For our purposes, "an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Kersey v. Jefferson*, 791 A.2d 419, 423 (Pa.Super.2002) (citations omitted).

*Portugal v. Portugal*, 798 A.2d 246, 249 (Pa.Super.2002).

¶ 5 Appellant raises the following two issues:

> 1. Is Appellee's claim for child support and Petition for DNA Testing barred by the actual, legal determination of paternity in Robert Barr, not the Appellant, by order dated October 16, 1992, in the Court of Common Pleas of Beaver County, Pennsylvania at No. 664 DR 92 on transfer from the Court of Common Pleas of Lawrence County, Pennsylvania, at 826 of 1992 DR?
>
> 2. Is Appellee's claim for child support and Petition for DNA Testing against Appellant barred by the doctrine of estoppel?

Appellant's brief at 4.

■ ¶ 6 Appellant's first contention is that any support action against him is

barred by the October 16, 1992 support order and encompassing determination of paternity as to Robert Barr ("Husband"), Mother's husband.[3] We are compelled to agree.

¶ 7 The October 16, 1992 order was entered by consent as a result of Mother's September 4, 1992 support complaint against Husband. Pursuant to that order, Husband paid Mother $560.00 per month plus $10.00 per month on arrearages for support of Mother and Angel. Upon notification from the Lawrence County Domestic Relations Division that Mother's welfare case had been discontinued on January 13, 1993, the Beaver County Domestic Relations Division suspended the October 16, 1992 order on February 2, 1993, subject to Husband's payment of existing arrearages. Upon Husband's payment of arrearages, that case was closed in April 1994.

■ ¶ 8 Relevant case law is clear. "It is well-settled that entry of a court order for support of a child necessarily determines the issue of paternity." *R.J.K. v. B.L.*, 279 Pa.Super. 71, 420 A.2d 749, 750 (1980) (citations omitted). Indeed, there are a plethora of cases which hold that the failure to appeal a support order conclusively establishes paternity. *Adoption of Young*, 469 Pa. 141, 364 A.2d 1307 (1976); *Everett v. Anglemeyer*, 425 Pa.Super. 587, 625 A.2d 1252 (1993); *B.O. v. C.O.*, 404 Pa.Super. 127, 590 A.2d 313 (1991); *Sanders v. Sanders*, 384 Pa.Super. 311, 558 A.2d 556 (1989); *Commonwealth ex rel. Coburn v. Coburn*, 384 Pa.Super. 295, 558 A.2d 548 (1989) (*en banc*); *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 384 A.2d 1285

---

**3.** At the time of the hearings in this matter, neither Mother nor Husband had sought a divorce even though they separated in 1999. N.T., 4/28/05, at 11.

(1978); *Commonwealth ex rel. Nedzwecky v. Nedzwecky,* 203 Pa.Super. 179, 199 A.2d 490 (1964); *see also N.C. v. M.H.,* 2007 PA Super 123, ¶ 3 n. 2, 923 A.2d 499 (acknowledging above proposition but holding it not applicable therein due to existence of fraud); *Gebler v. Gatti,* 895 A.2d 1, 2 n. 1 (Pa.Super.2006) (same). "Thus, the party who sought the support order [Mother herein], is thereafter collaterally estopped from raising the paternity issue, which has already been determined as a matter of law." *Gulla v. Fitzpatrick,* 408 Pa.Super. 269, 596 A.2d 851, 855 (1991) (citing *Coburn, supra*). Moreover, the fact that the support order was consensual and not the result of a full evidentiary hearing "makes [it] no less final and no more subject to challenge." *R.J.K. v. B.L., supra* at 751.

¶ 9 The instant case is strikingly similar to *Sanders v. Sanders, supra.* Referencing that case, Appellant asserts that

> [a]lthough it is certainly possible that [Appellant] is the child's biological father, once paternity in [Husband] had been determined as a matter of law, paternity was no longer a relevant fact. [Mother] simply can not attempt to establish paternity in someone after paternity has already been established under the law; she cannot seek and receive child support from two men for the same child. This is a legal impossibility.

Appellant's brief at 31.

¶ 10 *Sanders* was a consolidated appeal from two orders of support against two different men for the same child. Therein, the mother, while married to Mr. Walker, bore two children, Sheila and Steven. Upon separation and divorce from Mr. Walker, the mother obtained a support order for the two children. Around that time, the mother married Mr. Sanders. Eventually, Sheila attained the age of majority, and the order was vacated as of the date of her eighteenth birthday. The order as to Steven was increased by agreement of Mr. Walker and reduced to court order. Mr. Walker did not appeal.

¶ 11 Five years after her divorce and remarriage to Mr. Sanders, the mother's second marriage apparently broke down, and she filed a complaint for support against Mr. Sanders on behalf of Steven and Celeste, their daughter. Three years later, the parties entered into a settlement agreement, approved by the court, which provided for Mr. Sanders's support of both Steven and Celeste. When the mother sought to modify support, testimony at the hearing held in response to that petition established that the mother already was receiving monthly support for Steven from Mr. Walker, her first husband. Mr. Sanders thereafter filed exceptions to the resulting support order. At the subsequent hearing, the mother testified that while Steven was born during her marriage to Mr. Walker, who was named on Steven's birth certificate, Mr. Sanders actually was Steven's biological father.

¶ 12 The court ordered the parties to submit to blood tests. Mr. Sanders argued that the court did not have jurisdiction to order blood tests since the previous, unappealed support order between Mr. Walker and the mother had established Steven's paternity. The trial court denied Mr. Sanders's exceptions, entered an order of support, and Mr. Sanders appealed; the issue on appeal was whether the unappealed support order against Mr. Walker necessarily determined the issue of Steven's paternity and therefore barred further reconsideration of that issue. We held that the mother was estopped from seeking support against Mr. Sanders and determined that the trial court erred in ordering the parties to undergo blood tests.

¶ 13 We noted in *Sanders* that typically, there existed an identity of the parties to

both causes of action. Thus, the "usual" case is one where "the putative father against whom a consensual order or court order has already been entered[,] later contests his paternity...." *Sanders, supra* at 559. In *Sanders,* as in the case at bar, Mr. Sanders relied upon the support order against Mr. Walker "to show that Walker's paternity has been established as a matter of law,[4] thus barring relitigation of the paternity issue." *Id.* The trial court disallowed Mr. Sanders's reliance on the support order entered against Mr. Walker, and we determined that the trial court erred based upon application of collateral estoppel. The following language is pertinent:

> Relitigation of the paternity issue is barred under the doctrine of collateral estoppel. "The doctrine of collateral estoppel is a broader concept than *res judicata.* It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 236, 464 A.2d 1313, 1318 (1983). *See Norris v. Beck,* 282 Pa.Super. 420, 422 A.2d 1363 (1980) (paternity is necessarily adjudicated in entering the initial support order); *see also Zampetti v. Cavanaugh,* 406 Pa. 259, 265, 176 A.2d 906, 909 (1962) ("a consent decree ... binds the parties with the same force and effect as if a final decree had been rendered after a full hearing on the merits.")

Unlike *res judicata,* there is no requirement that there be an identity of parties between the two actions to invoke the bar. "Parties to a subsequent action need not be the same as those in the prior suit in order to raise the question of collateral estoppel. Collateral estoppel may be used as either 'a sword or a shield' by a stranger to the [prior] action, as long as the party against whom the defense is invoked is the same." [citations omitted]

*Day,* 318 Pa.Super. at 236–37, 464 A.2d at 1319.

A plea of collateral estoppel is valid if: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *In re Estate of R.L.L.,* 487 Pa. 223, 228 n. 8, 409 A.2d 321, 323 n. 8 (1979).

*Id.* at 559–60.

¶ 14 We concluded therein that the mother, who had filed a complaint for support against Mr. Sanders after a consent order had already been entered against Mr. Walker for support of the same child, was collaterally estopped from raising the issue of paternity and seeking support from Mr. Sanders. We determined that all of the elements for a valid claim of collateral estoppel existed: 1) the issue of

---

4. Of course, the instant case has an added twist. Despite the existence of the 1992 support order against Husband, by virtue of Mother's 1995 support complaint against him, blood testing of Husband, which he did not request, n.t., 4/28/05, at 60–61, was ordered because Mother and Husband concealed the existence of the 1992 support order. Indeed, this Court in *Sanders* opined that such a scenario should not occur, when we stated, "Hypothetically, if **Walker** were to [subsequently] contest his paternity, the support order entered against him from which no appeal was taken would bar reconsideration on his behalf." *Sanders, supra* at 559 (emphasis added). Thus, the very situation that we noted in *Sanders* should not occur, took place herein.

paternity was adjudicated by entry of the initial order against Mr. Walker; 2) the consent order between Mr. Walker and the mother was a final judgment on the issue of paternity that bound them with the same force and effect as if there had been a full hearing on the merits and a final decree rendered; 3) the party against whom the "shield" was asserted, the mother therein, was a party to the prior adjudication; and 4) the party against whom collateral estoppel was asserted, the mother, had a full and fair opportunity to litigate the issue in question in the prior action. We stated,

> Mrs. Sanders had the opportunity, as well as the knowledge, to fully and fairly litigate the issue of the child's paternity during the proceedings with Walker. However, at that time she chose not to do so.... Although Mrs. Sanders stated that she informed Walker, her husband at the time Steven was born, of his nonpaternity, she nonetheless assigned paternity to him on the birth records, permitted him to support the child and assume parental duties, and, after separation, she sought and received support payments on behalf of Steven from him. Mrs. Sanders is therefore estopped from seeking support for the same child from another source.

*Id.* at 560. We opined that although it certainly was possible that Mr. Sanders was Steven's biological father, once paternity in Mr. Walker had been determined as a matter of law, paternity could not be relitigated. "A mother simply cannot attempt to establish paternity in someone after paternity has already been established under the law; she cannot seek and receive child support from two men for the same child. This is a legal impossibility." *Id.* (citations omitted).

¶ 15 In addressing this issue, the trial court herein acknowledged that the factors establishing collateral estoppel in the present case have been met. Supplemental Trial Court Opinion, 5/26/06, at 5. However, the court refused to apply the doctrine based upon Angel's best interests. This was error for two reasons. First, whether collateral estoppel applied was purely a question of law, and it did not encompass evaluation of the child's best interests. *See Sanders v. Sanders, supra* (absent appeal or showing of fraud in support order, issue of paternity is established **as a matter of law**) (citing *Wachter v. Ascero,* 379 Pa.Super. 618, 550 A.2d 1019 (1988)). Second, a reading of the trial court's opinion compels the conclusion that while it evaluated the factors for application of collateral estoppel, in refusing to apply the doctrine, it supported its rationale with citation to case law involving the doctrine of equitable estoppel. Thus, the legal basis for the trial court's refusal to apply the doctrine cannot be supported.

█ ¶ 16 We would be remiss if we did not reference the bases upon which a court can review a final support order. Allegations of fraud or of mutual mistake that induced a party to enter into a support order provide the only bases upon which such an order may be reviewed. *R.J.K. v. B.L., supra; Schultz v. Connelly,* 378 Pa.Super. 98, 548 A.2d 294 (1988). Husband never filed a petition to strike the 1992 support order and has never alleged fraud or mutual mistake.[5] Moreover, there is no evidence of record that Husband was induced to agree to that order through fraud or mutual mistake.

¶ 17 Mother testified that she told Husband as early as 1988, when Husband and Mother were married, that she was having

---

**5.** The supplemental certified record, which consists of filings from the 1992 and 1995 complaints in support, does not include any filings by Husband.

an affair with Appellant. N.T., 4/28/05, at 60. Thus, there was a basis for Husband to doubt that Angel was his child because he knew his wife was having an affair with another man at the time of conception. *Id.* at 61. Despite this knowledge, however, Husband chose to place his name on the birth certificate, to provide the child with medical insurance, and to claim Angel as a dependent on his income tax returns. *Id.* at 37–39. Mother testified that she suggested to Husband that he may not be Angel's father when the child was three months old, but Husband continued to claim the child as his, and knowing this, still agreed to pay child support in 1992. *Id.* at 16, 31, 37–39. Indeed, he and Mother had a subsequent child together. *Id.* at 30. This record cannot support the existence of fraud or mistake. Thus, we hold that Mother is collaterally estopped from denying Husband's paternity and determine that the trial court erred in ordering the parties to undergo genetic testing.

¶ 18 We now address Appellant's second issue. As an alternate basis for relief, Appellant asserts that Mother assumed all parental duties towards Angel and let Husband assume certain parental duties such as paying support, providing insurance, claiming her on his income tax return, and holding her out in public as his daughter. Appellant argues that to allow Mother and Husband to "shirk their assumed parental obligations" perpetrates a fraud on the court and flies in the face of *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997). Thus, Appellant also contends that DNA testing is barred in the instant case by the doctrine of equitable estoppel.

¶ 19 In matters involving paternity, we must first determine if the presumption of paternity applies. In *Brinkley v. King, supra* at 250, 701 A.2d at 180, our Supreme Court set forth the analysis required to determine the paternity of a child conceived or born during marriage:

> The essential legal analysis in these cases is twofold: first, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered.

¶ 20 The policy underlying the presumption of paternity is the preservation of marriage, and the presumption applies only in cases where that policy would be advanced by the application. *See Fish v. Behers,* 559 Pa. 523, 741 A.2d 721, 723 (1999). Here, while the parties remain married, there concededly is no intact family to preserve; hence, the presumption of paternity is not applicable. The trial court so concluded and neither party seriously argues that the trial court erred in its conclusion. Accordingly, we must determine whether the estoppel doctrine applies, which depends upon the particular facts of each case. *N.C. v. M.H., supra.*

¶ 21 Under the doctrine of paternity by estoppel, an individual may be "estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child." *Jones v. Trojak,* 535 Pa. 95, 634 A.2d 201, 206 (1993). Such estoppel "is based on the public policy that children should be secure in knowing who their parents are," *Brinkley, supra* at 249, 701 A.2d at 180, and, as such, it is designed to protect the best interests of minor children. *See Fish, supra.*

Generally, estoppel in paternity issues is "aimed at 'achieving fairness as between the parents by holding **both** mother and father to their prior conduct regarding paternity of the child.'" *Freedman v. McCandless*, 539 Pa. 584, 592, 654 A.2d 529, 533 (1995) (quoting *Gulla v. Fitzpatrick*, 408 Pa.Super. 269, 596 A.2d 851, 856 (1991) (emphasis in original)). "Where the principle [of estoppel] is operative, [paternity] tests may well be irrelevant, for the law will not permit a person ... to challenge the status which he or she has previously accepted." *Matter of Green*, 437 Pa.Super. 606, 650 A.2d 1072, 1074 (1994).

*Buccieri v. Campagna, supra* at 1223–24.

¶ 22 Appellant asserts that Mother should be equitably estopped from asserting any paternity claim against him. He argues applicability of *Fish v. Behers, supra*. The mother in *Fish*, like Mother herein, was involved in an extramarital affair at the time of conception. Unlike Mother in this case, however, she did not reveal the affair before the child was born. The focus in the two cases, however, is on the mothers' behavior, because the evaluation of applicability of paternity by estoppel for our purposes is aimed at holding Mother to her prior actions. The mother in *Fish* placed her husband's name on the birth certificate, and the family, as here, lived together for the next three years. The husband claimed the child as a dependent on his income tax returns and supported the child financially. Eventually, upon being told by his wife that he was not the father of the child when the child was three years old, he requested blood tests that excluded him as the child's biological father. The parties therein divorced and agreed to an order of support for their other children but did not provide for the child in question. The mother thereafter sought support from the man with whom she had the affair, and the trial court determined that she was not estopped from proceeding with a support action against him. On appeal, this Court reversed and held that the mother was estopped from asserting that her paramour was the child's father. Our Supreme Court concluded that the mother's conduct in continually assuring her husband that he was the father, naming him on the birth certificate, listing the child as a dependent on their joint income tax returns, and the husband's conduct in accepting the child and holding him out to the community at least for the first few years of the child's life estopped the mother from asserting that her paramour was the child's father.

¶ 23 The trial court in the instant case concluded that *Fish* "appears to be controlling," trial court opinion, 1/20/06, at 19, but distinguished the case on the basis that Mother herein informed Angel that Husband was not her father and suggested that Appellant was her father. Given all the facts of this case, we do not believe that this one factor precludes applicability of paternity by estoppel.

¶ 24 It must be remembered that Angel, who was born on December 1, 1989, presently is seventeen years old. She believed Husband was her father until she was eleven years old. Thus, the parties perpetuated the fiction for at least five years beyond Husband's exclusion by blood testing. When she was eleven years old, Mother told her, based solely on Mother's own speculation, that Appellant might be her father. N.T., 4/28/05, at 56. Husband, however, was the man named on her birth certificate, and he provided health insurance for her.[6] Husband was designated as

---

6. The supplemental certified record includes a copy of a health insurance card for Angel that is dated December 2002.

Angel's father on school records from Angel's ninth grade year, which certainly was well beyond the time Mother allegedly told Angel about her parentage. Supplemental record, 1/14/05. Husband claimed Angel on his income taxes and indeed, continued to do so even at the time of these hearings in 2005. N.T., 4/28/05, at 73. Husband even went to a parent-teacher conference for Angel in 2003, some eight years past the 1995 blood test that excluded Husband, when Angel was fourteen years old. *Id.* at 38.

¶ 25 Alternatively, Appellant, who was not present at the birth and is not listed on the birth certificate, has seen Angel only two or three times, has never placed her on his health insurance or claimed her on his income taxes, has never sent Angel cards or letters, and has absolutely no relationship with the seventeen-year-old. *Id.* at 38–39. Mother testified that Angel seems to "hate everyone right now" including Appellant, and has not requested a relationship with him. *Id.* at 62–63. When asked if Appellant and Angel had an ongoing relationship, Mother answered, "Not an ongoing relationship. Not a relationship at all." *Id.* at 63.

¶ 26 We believe that the record herein, as in *Fish,* supports the conclusion that Mother, due to her conduct, is estopped from asserting that Appellant is Angel's father.

¶ 27 Finally, the Uniform Act on Blood Tests to Determine Paternity gives courts authority to order blood tests only where paternity, parentage, or identity of a child is a relevant fact. 23 Pa.C.S. § 5104(c). Courts have deemed that paternity is not a relevant factor when a mother has sought and received prior custody or support orders which determined paternity as a matter of law, *Commonwealth ex rel. Coburn v. Coburn, supra,* or when a father has voluntarily acknowledged paternity and entered into an agreed support order for the child. *Wachter v. Ascero, supra.*

¶ 28 Accordingly, we are constrained to vacate the order granting DNA testing of Appellant and dismiss the support action against him.