J-S56001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| C.D.-S., | IN THE SUPERIOR COURT OF |
| --- | --- |
| Appellee | PENNSYLVANIA |
| v. | |
| B.M.D., | |
| Appellant | No. 695 MDA 2014 |

Appeal from the Order entered March 18, 2014
in the Court of Common Pleas of Lebanon County
Domestic Relations, at No(s): 2002-5-0967

BEFORE: PANELLA, J., WECHT, J., and PLATT, J.*

MEMORANDUM BY PANELLA, J. **FILED OCTOBER 16, 2014**

B.M.D. ("Appellant") appeals from the March 18, 2014 order of the Court of Common Pleas of Lebanon County denying his motion to request paternity testing in connection with K.S. ("Child"), born in November of 1999, as a result of a sexual relationship between Appellant and C.D.-S. ("Mother").[1] We affirm.

On November 26, 2013, Appellant denied paternity of Child and requested genetic testing. The trial court conducted a hearing on February 25, 2014, regarding Appellant's request for genetic testing. At the time of the hearing, Child was 14 years of age. Appellant participated in the hearing

---

* Retired Senior Judge assigned to the Superior Court.

[1] "This Court accepts immediate appeals from orders directing or denying genetic testing to determine paternity." **Buccieri v. Campagna**, 889 A.2d 1220, 1220 n.1 (Pa. Super. 2005) (citation omitted).

via telephone, and Mother appeared at the hearing. Neither Appellant nor Mother was represented by counsel.

At the hearing, Mother testified that, when Child was conceived, she was not having consensual sexual relations with anyone other than Appellant. *See* N.T., 2/25/14, at 13. On February 28, 1999, Mother was raped by Damien T. Fields. Fields was charged and subsequently convicted of Mother's rape. *See id*., at 5, 15. Following the rape, Mother went to the hospital, and the nurses performed a rape kit test. After the test, the nurses informed Mother that she was already pregnant. *See id*., at 19-20. At that time, the nurses also informed Mother that it was "extremely unlikely" that the rapist was the father of her unborn child since there would not have been enough time for the rape to result in a pregnancy that could be verified by hormonal testing. *See id*., at 2.

When Child was born in November of 1999, Appellant signed an Acknowledgment of Paternity at the hospital. At the time of Child's birth, Appellant was 17 years of age, and was accompanied by his mother when he acknowledged paternity of Child. *See id*., at 6, Exhibit 1. At that point, Appellant did not question his paternity or request genetic testing. *See id*., at 20.

Appellant acted in a manner consistent with parenthood for several years following Child's birth. Appellant lived in New York during Mother's pregnancy, but came to visit following Child's birth. Appellant would "buy

diapers here and there." *Id*., at 15-17. Appellant never requested genetic testing, nor did he question Child's ethnicity during the first two years of Child's life. *See id*., at 20. Appellant also testified that he tried to see Child after she was born, and he moved back to Pennsylvania to see if he and Mother could work things out, but Mother cut him off and was pushing him away. *See id*., at 11. Appellant testified that he lost contact with Child when she was two years old, and has seen not seen either Child or Mother for over ten years. *See id*., at 12.

At Mother's request Appellant signed a Stipulation of Custody in 2010 within which he acknowledged that he was the father of Child, and by which he awarded Mother sole legal and physical custody of Child. *See id*., at 7, Exhibit 2. At that time, Appellant still did not request genetic testing. *See id*., at 8.

Mother first sought child support from Appellant on December 27, 2002. At the time, Appellant's whereabouts were not known to Mother or to the Lebanon County Domestic Relations Office. Mother's child support complaint was dismissed on May 15, 2003. Mother's next attempt to obtain child support was initiated on June 8, 2011. Service of the Complaint was effectuated upon Appellant at his residence in Florida. On July 5, 2011, Appellant wrote a letter to the Lebanon County Domestic Relations Office requesting to participate in the support proceeding via telephone. In the letter, Appellant for the first time questioned the paternity of Child. A child

support conference was conducted on July 13, 2011. The record is unclear with respect to whether Appellant participated via telephone. An Interim Order was entered on July 13, 2011, that required Appellant to pay $353.00 per month in child support. The Order was mailed to Appellant together with a notice that he had a right to request a full hearing before the trial court. Father never paid the child support, and never requested a hearing. On September 27, 2011, a bench warrant was issued for Appellant's arrest. The bench warrant is still pending.

After the February 25, 2014 hearing, the trial court issued an Order and Opinion on March 18, 2014, denying Appellant's Petition to Open Paternity. Appellant filed a timely Notice of Appeal.

We review an order denying genetic testing for an abuse of discretion. *See Barr v. Bartolo*, 927 A.2d 635, 639 (Pa. Super. 2007). "An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." *Id*. (citation omitted). We will not disturb the trial court's factual findings so long as they are supported by sufficient evidence. *See Vargo v. Schwartz*, 940 A.2d 459, 462 (Pa. Super. 2007).

Our Supreme Court has instructed that "[u]nder the doctrine of paternity by estoppel, an individual may be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child." *Bahl v. Lambert Farms, Inc.*, 819 A.2d

534, 539 (Pa. 2003) (citation and internal quotation marks omitted).  This

Court, sitting *en banc*, explained:

> [T]he legal determination that because of a person's conduct (e.g. holding out the child as his own, or supporting the child) that person, regardless of his true biological status, *will not be permitted to deny parentage,* nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.  As [this Court] has observed, the doctrine of estoppel in paternity actions is aimed at 'achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding paternity of the child.'

**R.W.E. v. A.B.K.**, 961 A.2d 161, 169 (Pa. Super. 2008) (quoting **Wieland**

**v. Wieland**, 948 A.2d 863, 869 (Pa. Super. 2008)).

> Furthermore, in **Vargo**, we explained:
>
> "The finder of fact is entitled to weigh the evidence presented and assess its credibility."  **Smith v. Smith**, 904 A.2d 15, 20 (Pa. Super. 2005).  In so doing, the finder of fact "is free to believe all, part, or none of the evidence and [we as an appellate court] will not disturb the credibility determinations of the court below."  **Id**. (citation omitted).

940 A.2d at 462.

In denying Appellant's motion, the trial court found that Appellant

signed an Acknowledgment of Paternity in the presence of his mother shortly

after Child was born.  Although Appellant denied the knowledge of his

mother's presence, Mother testified at the hearing that Appellant's mother

was present and had even changed the spelling of Child's name.  The trial

court found Mother's testimony to be more credible than the testimony of

Appellant, and rejected Father's testimony that his mother was not present,

and that he did not know what he was doing when he signed the Acknowledgment of Paternity.

In addition, Mother testified that Appellant came down from his home in New York shortly after Child was born, and bought diapers occasionally. Father also testified that he moved back to Pennsylvania to see if he and Mother could work anything out, but Mother pushed him away. The evidence revealed that Father abandoned Mother and Child for over a decade and moved to Florida. In June of 2011, Mother's Complaint for Child Support was served upon Appellant. At that time, there was still no mention of Appellant requesting genetic testing until the support hearing of February 25, 2014. Therefore, we find not abuse of discretion on the part of the trial court in denying the motion. *See Barr v. Bartolo*, 927 A.2d at 639.

Moreover, the trial court did not abuse its discretion in applying the doctrine of estoppel. As noted, "[u]nder the doctrine of estoppel, an individual may be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child." *Bahl*, 819 A.2d at 539. The trial court correctly concluded that Appellant waited fourteen years to challenge the paternity of Child, raising the issue only after being faced with child support obligations. Moreover, the trial court also determined that the best interest of Child would be served by disallowing a genetic test to determine whether Appellant is the biological father of Child. The trial court prudently reasoned that there is no way that

genetic testing would enhance Child's life, and would provide multiple risks to Child and her emotional well-being. ***See K.E.M. v. P.C.S.***, 38 A.3d 798 (Pa. 2012). The trial court did not abuse its discretion.

Finally, the trial court's decision did not indicate prejudice, bias, or ill will on the part of the trial court. Mother's testimony was supported by Appellant's Acknowledgement of Paternity, which had been admitted into the record. Based on this credited testimony, the trial court did not err in concluding that Appellant was precluded from challenging the paternity of Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2014