J-A09030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.E.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.D.J. | |
| Appellant | No. 1487 MDA 2015 |

Appeal from the Order Entered August 6, 2015
In the Court of Common Pleas of Cumberland County
Domestic Relations at No(s): 967 S 2013
PACSES NO. 125114325

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                          **FILED MAY 10, 2016**

Appellant J.D.J. ("Father") appeals from the order entered in the Cumberland County Court of Common Pleas, which denied Appellant's support exceptions and affirmed the support master's denial of genetic testing.  We affirm.

The relevant facts and procedural history of this appeal are as follows. J.J. ("Child") was born on February, 2004, while Child's mother ("Mother") and Father were in a relationship. The next day, Father, who was seventeen (17) years old, signed an acknowledgement of paternity ("AOP").  On May 23, 2006, the court issued a support order for Child.  Father did not make

_____

[*] Retired Senior Judge assigned to the Superior Court.

payments on the order, although he informally made payments to Mother. In December, 2006, Mother gave birth to C.J. Father does not contest that C.J. is his child.

On October 22, 2013, Father signed a custody agreement that assigned primary custody of Child and C.J. to G.B. and M.E.B. ("Appellee"), because Mother had been in jail and was going into rehabilitation.

On November 8, 2013, Appellee filed a complaint for support against Father. On September 18, 2014, the court filed an interim order that required Father to pay $481.00 per month ($437.00 in support and $44.00 in arrears). On October 3, 2014, Father requested a hearing. On December 10, 2014, the court conducted a hearing. On January 6, 2015, the court entered an "Interim Order of Court," which denied Father's request for genetic testing and affirmed the interim order entered on September 18, 2014. On January 22, 2015, Father filed exceptions. On August 6, 2015, the court denied Father's exceptions and affirmed its order denying his request for genetic testing.

On September 3, 2015, Father filed a notice of appeal but did not file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 9, 2015, this Court designated the case as a Children's Fast Track appeal and ordered Appellant to file a Pa.R.A.P.

J-A09030-16

1925(b) statement in the trial court.[1]  Appellant complied on October 19, 2015.

Appellant raises the following issues for our review:

A. DID THE TRIAL COURT ERR WHEN IT FOUND THAT THE DOCTRINE OF PATERNITY BY ESTOPPEL APPLIED TO [FATHER'S] RELATIONSHIP WITH THE CHILD DESPITE THE LACK OF EVIDENCE DEMONSTRATING THE ARRANGEMENT WAS IN THE CHILD'S BEST INTERESTS?

B. DID THE TRIAL COURT ERR WHEN IT FOUND [FATHER'S] PARTICIPATION IN A CUSTODY ACTION INVOLVING MULTIPLE CHILDREN WAS SUFFICIENT TO CONCLUDE THAT [FATHER] HAD HELD HIMSELF OUT TO BE THE FATHER OF THE CHILD?

C. DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN DENYING [FATHER'S] REQUEST FOR GENETIC TESTING UNDER THE DOCTRINE OF PATERNITY BY ESTOPPEL?

Father's Brief at 2.

In his combined issues, Father argues the doctrine of paternity by estoppel should not apply to him.  He claims he is not Child's father, he did not hold himself out to be Child's father, he signed the AOP before he had

---

[1] On October 19, 2015, this Court issued an order to show cause as to why this appeal should not be quashed as untimely filed from the January 6, 2015 order denying Appellant's request for genetic testing.  On October 21, 2015, Appellant filed a response, explaining that the order was not final and appealable until the court had ruled on his exceptions.  On October 22, 2015, this Court discharged the rule to show cause but referred the issue to the merits panel.  Because the trial court did not rule on Father's timely exceptions until August 6, 2015, his appeal, filed September 3, 2015, was timely and is properly before us.  **See Barr v. Bartolo**, 927 A.2d 635, 638 (Pa.Super.2007) ("This Court accepts immediate appeals from orders directing or denying genetic testing to determine paternity").

- 3 -

reached the age of majority after being fraudulently induced into believing he was Child's father, he has no relationship with Child, and applying the doctrine of paternity by estoppel would not be in the best interest of Child. We disagree.

We employ the following standard of review concerning paternity questions:

> In reviewing matters involving child support, we as an appellate court will not disturb a trial court order absent an abuse of discretion. ***Doran v. Doran***, 820 A.2d 1279, 1282 (Pa.Super.2003) (applying this standard of review to a case involving a question of paternity).
>
> An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough [for reversal] that we, if sitting as a trial court, may have made a different finding.

***Vargo v. Schwartz***, 940 A.2d 459, 462 (Pa.Super.2007) (some internal citations omitted).

Generally, a purported father does not have a statutory right to come into court to have his paternity determined, and he has no right to a trial on the issue of paternity. ***See In re Estate of Greenwood***, 587 A.2d 749, 754 (Pa.Super.1991) ("The statute…provides a device affording both the father and mother the right to acknowledge paternity. The statute does not afford the father the right to come into court to have his paternity

determined."); ***Minnich v. Rivera***, 506 A.2d 879, 880 (Pa.1986), *aff'd,* 483 U.S. 574, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987).

"Under the doctrine of paternity by estoppel, a putative father who is not a child's biological father is estopped from challenging paternity after he has held himself out as the child's father or provided support." ***Ellison v. Lopez***, 959 A.2d 395, 397-98 (Pa.Super.2008); ***see also*** 23 Pa.C.S. § 5102(b)(2). In paternity actions, estoppel is:

> merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child.

***Doran***, 820 A.2d at 1282-83.

The relevant statute regarding acknowledging paternity provides, in pertinent part:

**§ 5103. Acknowledgment and claim of paternity**

**(a) Acknowledgment of paternity.--**The father of a child born to an unmarried woman may file with the Department of Public Welfare, on forms prescribed by the department, an acknowledgment of paternity of the child which shall include the consent of the mother of the child, supported by her witnessed statement subject to 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities). In such case, the father shall have all the rights and duties as to the child which he would have had if he had been married to the mother at the time of the birth of the child, and the child shall have all the rights and

duties as to the father which the child would have had if the father had been married to the mother at the time of birth. The hospital or other person accepting an acknowledgment of paternity shall provide written and oral notice, which may be through the use of video or audio equipment, to the birth mother and birth father of the alternatives to, the legal consequences of and the rights and responsibilities that arise from, signing the acknowledgment.

\* \* \*

**(d) Conclusive evidence.--**Notwithstanding any other provision of law, an acknowledgment of paternity shall constitute conclusive evidence of paternity without further judicial ratification in any action to establish support. The court shall give full faith and credit to an acknowledgment of paternity signed in another state according to its procedures.

\* \* \*

**(g) Rescission.--**

(1) Notwithstanding any other provision of law, a signed, voluntary, witnessed acknowledgment of paternity subject to 18 Pa.C.S. § 4904 shall be considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of the following:

(i) sixty days; or

(ii) the date of an administrative or judicial proceeding relating to the child, including, but not limited to, a domestic relations section conference or a proceeding to establish a support order in which the signatory is a party.

(2) ***After the expiration of the 60 days, an acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence***. An order for support shall not

> be suspended during the period of challenge except for good cause shown….

23 Pa.C.S. § 5103 (emphasis added).

"When allegations of fraud arise in a paternity action, an estoppel analysis must proceed in a different manner than it would without such averments." *Doran*, 820 A.2d at 1279 (quoting *McConnell v. Berkheimer*, 781 A.2d 206, 211 (Pa.Super.2001)). "[This Court will] not allow the application of estoppel to punish the party who sought to do what was righteous and reward the party who had perpetrated a fraud." *Glover v. Severino*, 946 A.2d 710, 714 (Pa.Super.2008). "Evidence of fraud 'must be considered by the trial court in whether to apply paternity by estoppel.'" *Doran*, 820 A.2d at 1279 (quoting *Sekol v. Delsantro*, 763 A.2d 405, 410 (Pa.Super.2000)).

This Court has adopted the traditional elements of fraud established in Pennsylvania:

> (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.
>
> *     *     *
>
> Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression. Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture.

***R.W.E. v. A.B.K.***, 961 A.2d 161, 167-68 (Pa.Super.2008) (emphasis deleted).

> Proof of fraud or misrepresentation precludes application of paternity by estoppel. Where…there is no intact family unit to protect, the presumption of paternity does not apply. Whether the estoppel doctrine applies depends upon the particular facts of the case. Estoppel in paternity actions is based on the public policy that children should be secure in knowing who their parents are; if a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

***Gebler v. Gatti***, 895 A.2d 1, 3-4 (Pa.Super.2006) (internal citations omitted).

In ***Gebler***, this Court found the doctrine of paternity by estoppel did not apply when a father held himself out to be the father of the child for the first eighteen months of the child's life, after having acknowledged paternity at birth, but stopped acting as a father when he realized he was not the child's father. In ***Gebler,*** the Father brought an action for paternity testing as soon as he realized he was not the child's father.

Here, Father signed the AOP when he was 17 years old. He alleges he only signed the AOP because Mother fraudulently induced him into believing he was the child's father, when another individual, R.B., was actually Child's father. Although Father testified that he believed he was the father when he signed the AOP, Appellee testified otherwise. She testified:

> [Mother] never told me [R.B.] was the father. I know when she was pregnant with [Child] that [Father] and

everybody else knew there was a possibility he was not the father but that him and [Mother] were together and that he said that he didn't care one way or another, that he was going to raise the child as his and be with [Mother]…And [Father] told [R.B.] to leave, that he was going to be the father of this child no matter what the DNA test said and that that was his family. And he stayed with the mother for four years after that to have another child with her.

N.T., 12/10/2014, at 40-41. Unlike the father in **Gebler**, Father has always known that he might not be Child's father and is just now contesting paternity.

Although the trial court considered the evidence of fraud proffered by Father, it ultimately decided to apply paternity by estoppel. The court made the following findings of fact:

8. [Father] signed an [AOP] on February 2, 2004.

9. At the time [Father] signed the [AOP] he was 17 years old.

* * *

11. At the time [Child] was born [Father] was aware there was another man, [R.B.], who could be [Child's] father.

Support Master's Report and Recommendation, filed January 6, 2015.

In its opinion in support of the order, the court stated: "while [Father] did present some evidence which implies it is possible [Mother] and her family are actively allowing a fraud to continue at the expense of [Father], whether other parties are acting in good faith or not is ultimately a red herring, as [Father] by his own choices has on multiple occasions acquiesced in legal proceedings which were based on the assumption he was [Child's] biological father." **Id.** at 7.

In affirming the order, the trial court reasoned:

In the present case, there is no reason shown to disregard the prior litigation that [Father] has been involved in regarding this child. It is clear from the review of the record that he very much is the "psychological"[1] father and has held himself consistently out to be so. [Father] signed an [AOP] a day after the child was born and did not rescind it, engaged in multiple custody and support cases relating to the child against both the child's mother and [Father], has signed many other documents acknowledging paternity, and has stated previously that he was going to be the father of the child regardless of what a DNA test would elucidate regarding his biological relation to the child. [Father's] assertion in his brief that he "has no bond or relationship with the child" is entirely disingenuous and not supported by [Father's] actions and statements.

[1] "Psychological" parents are individuals who have stepped into the shoes of a parent and fulfilled the roles normally associated with being a parent of a child without regard to a true biological relation to the child. For instance, a single mother's significant other of a number of years could be considered a psychological parent if that person were to bond closely with the child and hold themselves out as the child's parent or otherwise not correct for the child and society that they are not the child's parent.

It matters not whether [Father] is the biological father of the child when it is apparent that [Father] has gone through much conflict to continually assert his place as the child's father. It [is] undeniably in the best interests of the child to have the support of a man who has continuously fought to be recognized as a father continue to provide support. To make a determination allowing [Father] to forsake holding the child out as his own to avoid a support obligation would be entirely against the stated purpose of the doctrine of paternity of estoppel to protect the child from being told that his "dad" is not in fact his "father." Even if "the child would not know [Father] if he walked into the room," [Father's] actions in the early years of the child's life foreclose him from now disingenuously denying his parental status.

*    *    *

> [Father], as the record demonstrates, has historically been an active father who cares for the child as family and consistently went to court as a father. No amount of opining as to the motives of [Appellee's] resistance to genetic testing changes the simple fact that [Father] is unquestionably estopped from denying paternity.

Trial Court "Opinion and Order of Court," filed August 6, 2015, at 2-3.

The court considered evidence of fraud before deciding to apply paternity by estoppel. It chose to believe Appellee's testimony that Father was aware he might not be the father of Child when he signed the AOP. Thus, Father failed to rescind the AOP within 60 days and he failed to show fraud as a reason to rescind it past the 60 day period. Further, he held himself out to be Child's father after he had reached the age of majority, and he did not attempt to rescind the AOP within a reasonable amount of time of reaching majority.[2] He did not attempt to rescind the AOP until he was required to pay support for his child. Further, he did not allege that he was fraudulently induced into signing the AOP until he was required to pay support. The trial court's findings of fact are supported by the record, and there is no abuse of discretion.

---

[2] When a minor enters into a contract, he may disaffirm the contract within a reasonable time of reaching the age of majority. **Campbell v. Sears, Roebuck & Co.**, 161 A. 310, 312 (Pa.1932). "Ratification of the contract will be inferred from any action on his part manifesting an intention to regard the contract as binding." **Id.**

- 11 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016