Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/02/2020 09:09 AM CDT

Tyler F., appellant, v. Sara P., appellee.

Geoffrey V., as next friend of J.F., a minor child,
appellee and cross-appellant, v. Sara P., appellee
and cross-appellee, and Tyler F., appellant
and cross-appellee.

___ N.W.2d ___

Filed July 10, 2020.    Nos. S-19-513, S-19-514.

1. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.

2. **Statutes.** Statutory interpretation presents a question of law.

3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

4. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

5. **Appeal and Error.** An appellate court may, at its option, notice plain error.

6. **Paternity: Acknowledgments: Rescission: Time.** In Nebraska, a paternity acknowledgment operates as a legal finding of paternity after the rescission period has expired.

7. **Paternity: Acknowledgments.** Paternity may be established by a properly executed acknowledgment, and establishment of paternity by acknowledgment is the equivalent of establishment of paternity by judicial proceeding.

8. **Parental Rights: Child Custody: Paternity: Acknowledgments: DNA Testing.** A father whose paternity is established by a final, voluntary

acknowledgment has the same right to seek custody as the child's biological mother, even if genetic testing shows he is not the biological father.

9. **Paternity: Acknowledgments: DNA Testing.** DNA testing which later shows the identified individual is not the child's biological father is insufficient to set aside a properly executed acknowledgment of paternity.

10. **Paternity: Acknowledgments: Parent and Child.** An acknowledgment legally establishes paternity and grants the individual named as father the legal status of a parent to the child regardless of genetic factors.

11. **Paternity: Statutes.** Paternity proceedings are purely statutory, and because the statutes regarding paternity proceedings modify the common law, they must be strictly construed.

12. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

13. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

14. **Paternity: Parties: Acknowledgments.** A previous paternity determination, including a properly executed and undisturbed acknowledgment, must be set aside before a third party's paternity may be considered.

15. **Paternity.** A party seeking to establish paternity must first set aside an existing determination.

16. **Acknowledgments: Proof.** In order to set aside an unrevoked acknowledgment, the moving party has the burden to show the acknowledgement was a result of fraud, duress, or material mistake.

17. **Paternity: Acknowledgments.** A party executing an acknowledgment of paternity has a duty to exercise reasonable diligence in the execution of the acknowledgment to ensure that it was grounded in fact.

18. **Words and Phrases.** Reasonable diligence means appropriate action where there is some reason to awaken inquiry and direct diligence in a channel in which it will be successful.

Appeals from the District Court for Lancaster County: KEVIN R. McMANAMAN, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Andrea L. McChesney, of McChesney Family Law Office, for appellant.

Joel Bacon and Tara L. Gardner, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee Geoffrey V.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

The district court awarded joint legal and physical custody of J.F. to Sara P., Tyler F., and Geoffrey V. Tyler appealed and assigned various errors. Geoffrey then cross-appealed. We conclude that the district court did not err in finding that Sara failed to meet her burden to set aside the notarized acknowledgment of paternity executed by Tyler and Sara at the time of J.F.'s birth. We further conclude that the trial court committed plain error in considering Geoffrey's paternity complaint while failing to give proper legal effect to Tyler's acknowledgment of paternity. We therefore affirm the court's denial of Sara's counterclaim to set aside Tyler's acknowledgment of paternity; reverse the district court's award of joint legal and physical custody of J.F. to Sara, Tyler, and Geoffrey; and remand the cause for further proceedings.

## BACKGROUND

Sometime around November 2007, Tyler and Sara were dating and engaged in sexual intercourse. Sara gave birth to J.F. in August 2008. Sara continually represented to Tyler that he was the father of J.F., and Tyler signed an acknowledgment of paternity at the hospital when J.F. was born and is listed as J.F.'s father on the birth certificate.

Sara also engaged in sexual intercourse with Geoffrey around November 2007. Sara contends she believed Tyler was J.F.'s father because of information she received from her physician about her due date. At one point during the pregnancy, however, she contacted Geoffrey about the possibility that he might be the father and, about 8 to 9 months after J.F.'s birth, Geoffrey and Sara had discussions about genetic testing to determine paternity. Sara testified that she

always had a "gut feeling" that J.F. might not be Tyler's biological child and that this "gut feeling" that "maybe he could be [Geoffrey's existed] when [Sara] was pregnant, when [J.F.] was born [and] when [J.F.] started really looking like him." It is undisputed she did not tell Tyler about Geoffrey's possible paternity.

Following J.F.'s birth, Tyler and Sara shared parenting responsibilities despite ceasing their romantic relationship, even through Sara's move to Oklahoma in 2013. At the time of Sara's move, J.F. was in the middle of his first year of preschool and the parties agreed J.F. would continue to attend school in Nebraska and reside with Tyler. After the school year, in the summer of 2014, Sara indicated to Tyler that she wanted J.F. to stay with her and attend kindergarten in Oklahoma.

Extending from the parties' disagreement concerning J.F.'s schooling, Tyler filed a complaint to establish paternity, custody, and parenting time under case No. CI 14-2745, currently under appeal as case No. S-19-513. In his complaint, Tyler sought joint legal and physical custody of J.F., as well as an order determining paternity. Tyler alleged in this complaint that he "believes he is the biological father of [J.F.] and has always held himself out as such," that Sara "has always held [Tyler] out as [J.F.'s] biological father," and that Tyler "is listed and acknowledged on [J.F.'s] birth certificate."

In Sara's answer and counterclaim, she alleged that Tyler is not J.F.'s biological father and that he has no standing to request custody of J.F. As such, Sara sought, in part, that the district court dismiss Tyler's complaint, declare Tyler not to be the biological father of J.F., and award Sara sole physical and legal custody.

During the proceedings, the court ordered DNA testing that showed Tyler was not J.F.'s biological father. Following receipt of the testing results, Sara amended her answer and counterclaim, seeking, among other things, an order rescinding Tyler's acknowledgment of paternity on the ground of mutual mistake and disestablishing paternity.

Shortly after the DNA test excluded Tyler as the biological father, Sara reached out to Geoffrey and told him she believed he was the father. Geoffrey then filed a motion to intervene in Tyler's case, seeking intervention as the "biological father of [J.F.]" However, the court denied Geoffrey's motion because Geoffrey provided no basis to avoid the 4-year statute of limitations under Neb. Rev. Stat. § 43-1411 (Reissue 2016) and did not allege he was unaware of J.F.'s birth or the possibility of paternity.

Thereafter, Geoffrey filed a complaint to establish paternity under case No. CI 15-119, currently under appeal as case No. S-19-514, seeking that physical and legal custody be placed with Sara subject to his and Tyler's visitation rights. Geoffrey's complaint acknowledged Tyler as J.F.'s legal father, referencing Tyler's acknowledgment of paternity, and explained that Geoffrey was not made aware he was J.F.'s biological father until October 2014, when Sara told him about the results of Tyler's DNA test. The complaint's caption listed "Geoffrey [V.], as next friend of [J.F.], a minor child," as plaintiff. However, the text of the complaint and the signature line at the end of the complaint described only Geoffrey, individually, without mentioning his status as next friend of J.F. Geoffrey also noted that genetic testing established Tyler was not the biological father and alleged that Tyler's belief he was the biological father was "based on the material mistake of fact based on the representations of Sara . . . at the time [J.F.] was conceived and born." Geoffrey claimed, "The presumption that . . . Tyler . . . is the father of [J.F.], through his signed Acknowledgment of Paternity, has been rebutted through genetic testing and the records of the Nebraska Department of Health and Human Services should be corrected."

Tyler filed an answer to Geoffrey's complaint. In his answer, Tyler requested the court dismiss the complaint insofar "as the matter has already been decided in Case No. CI14-2745." The answer did not specifically raise any statute of limitations defenses.

The court consolidated cases Nos. CI 14-2745 and CI 15-119, held a trial, and entered an order in January 2016. The court determined that Geoffrey had standing to act in the capacity of next friend of J.F., that Tyler is the father of J.F. by reason of the acknowledgment of paternity, and that Geoffrey is the father of J.F. by reason of biological testing. The court found Sara failed to meet her burden to establish mutual mistake and denied her motion to set aside Tyler's acknowledgment. The court, therefore, considered the rights and interests of Tyler, Geoffrey, and Sara in making custody, parenting time, and child support determinations. The court awarded legal and physical custody of J.F. to Tyler, subject to visitation with Geoffrey and Sara, until December 31, 2016, at which time all three parties were awarded joint legal and physical custody. The court also calculated child support by considering the incomes of Tyler, Geoffrey, and Sara and ordered Geoffrey and Sara to pay child support until December 31, when all support obligations were to cease.

Tyler appealed, assigning the district court erred in finding that Geoffrey had standing to bring his claim as next friend of J.F. and in deviating from the child support guidelines in setting child support. Geoffrey cross-appealed and assigned that the court erred in concluding he had not raised a claim in his individual capacity and, to the extent the appellate court might conclude Tyler's paternity acknowledgment had to be set aside before determining that Geoffrey had paternity, that the court erred in evaluating the material mistake of fact question from Sara's perspective.

The Nebraska Court of Appeals reversed the district court's order.[1] First, the Court of Appeals determined Geoffrey lacked standing to raise any claims on J.F.'s behalf, as J.F.'s next friend, because J.F. was in the custody of Sara, his biological mother, and Tyler, his legal father, and thus not without a guardian. However, the appellate court found that the trial

---

[1] *Tyler F. v. Sara P.*, 24 Neb. App. 370, 888 N.W.2d 537 (2016).

court failed to address whether Geoffrey was also bringing his claims in his individual capacity. As such, the cause was remanded to the district court for determination of whether Geoffrey also brought his claims in his individual capacity and whether such individual claims are barred by the statute of limitations.

On remand, the district court found that Geoffrey had brought his claims in both his individual capacity and as J.F.'s next friend due to the language and intended beneficiary of the complaint. The court then found that Geoffrey's individual claims were not barred by the statute of limitations, because Tyler waived the defense by failing to assert it in his answer or another responsive pleading. The court found that even if Tyler had not waived the statute of limitations, it was tolled because Geoffrey alleged he was not made aware he was J.F.'s biological father until October 2014 and Tyler's answer did not sufficiently deny this allegation. Similarly, the court determined that res judicata did not bar Geoffrey's claims due to the court's denial of Geoffrey's motion to intervene, because Tyler failed to raise it as an affirmative defense and because even if he had, res judicata was inapplicable to the instant case. Given the court's finding that Geoffrey also brought his claims in his individual capacity, the court reinstated its previous order "with the caveat that the order applies to [Geoffrey] individually rather than as next friend of J.F."

## ASSIGNMENTS OF ERROR

Tyler assigns, restated, that the district court erred in (1) finding Geoffrey brought his claims in his individual capacity, (2) finding Tyler waived the statute of limitations defense, (3) finding the statute of limitations was tolled, (4) finding Geoffrey's claims were not barred by the denial of his motion to intervene, (5) failing to find Geoffrey's claims were time-barred, and (6) deviating from the child support guidelines in the custody award.

On cross-appeal, Geoffrey assigns, contingent on a finding of plain error in the district court's conclusion that Tyler's

paternity acknowledgment did not have to be set aside before the district court could determine whether Geoffrey had paternity, that the court erred in failing to set aside Tyler's paternity acknowledgment.

## STANDARD OF REVIEW

[1] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.[2]

[2,3] Statutory interpretation presents a question of law.[3] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[4]

## ANALYSIS

### Acknowledgment of Paternity

Before reaching the assigned errors, we first address the question of whether the district court committed plain error in determining it unnecessary to set aside Tyler's paternity acknowledgment before considering Geoffrey's complaint to establish paternity.

[4,5] Plain error exists where there is an error, plainly evident from the record, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[5] An appellate court may, at its option, notice plain error.[6]

---

[2] *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[3] *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

[4] *Id.*

[5] See, *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019); *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[6] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

When J.F. was born, Tyler and Sara signed a notarized acknowledgment of paternity in which they attested that Tyler was J.F.'s biological father. Although Sara's amended answer and counterclaim sought to set aside this acknowledgment following the court-ordered DNA test that showed Tyler was not J.F.'s biological father, the district court declined to do so, finding Sara failed to meet her burden to prove a material mistake of fact had occurred. As such, the court found the acknowledgment remains in effect. However, the court went on to determine that it could consider Geoffrey's simultaneous claim of paternity without setting aside Tyler's acknowledgment. The court then found that both Tyler and Geoffrey were the fathers of J.F. and that Sara retained the position of mother under the paternity statutes.

[6] In Nebraska, a paternity acknowledgment operates as a legal finding of paternity after the rescission period has expired.[7] The proper legal effect of a signed, notarized acknowledgment of paternity is a finding that the individual who signed as the father is in fact the legal father.[8] Neb. Rev. Stat. § 43-1409 (Reissue 2016) establishes this legal effect and provides:

> The signing of a notarized acknowledgment, whether under section 43-1408.01 or otherwise, by the alleged father shall create a rebuttable presumption of paternity as against the alleged father. The signed, notarized acknowledgment is subject to the right of any signatory to rescind the acknowledgment within the earlier of (1) sixty days or (2) the date of an administrative or judicial proceeding relating to the child, including a proceeding to establish a support order in which the signatory is a party. After the rescission period a signed, notarized acknowledgment is considered a legal finding . . . .

---

[7] *In re Adoption of Jaelyn B.*, 293 Neb. 917, 883 N.W.2d 22 (2016); *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

[8] *Cesar C., supra* note 7.

[7] Relatedly, in describing child support obligations of the parents, Neb. Rev. Stat. § 43-1402 (Reissue 2016) refers to "[t]he father of a child whose paternity is established either by judicial proceedings or by acknowledgment as hereinafter provided . . . ." We have explained that this language in § 43-1402 contemplates that paternity may be established by a properly executed acknowledgment and that establishment of paternity by acknowledgment is the equivalent of establishment of paternity by judicial proceeding.[9]

[8] Reading §§ 43-1402 and 43-1409 together, the provision in § 43-1409 that an acknowledgment is a "legal finding" means that a properly executed acknowledgment legally establishes paternity in the person named in the acknowledgment as the father.[10] A father whose paternity is established by a final, voluntary acknowledgment has the same right to seek custody as the child's biological mother, even if genetic testing shows he is not the biological father.[11]

Here, it is undisputed that the acknowledgment of paternity signed by Tyler and Sara was properly executed. Additionally, there is no evidence that either party to the acknowledgment sought to rescind it within the statutory rescission period. The acknowledgment remained in full force and effect at the time of Tyler's paternity action and legally determined Tyler's paternity of J.F. As such, upon finding that the notarized acknowledgment of paternity had been properly signed, the court should have treated Tyler's paternity as having been legally established and treated this action as one solely to determine issues of custody and support as between two legal parents, and not one to establish paternity.[12]

[9,10] In her answer and counterclaim, Sara alleged Tyler was neither the legal nor the biological father of J.F. As a

---

[9] See *id.*

[10] See *id.*

[11] *In re Adoption of Jaelynn B., supra* note 7.

[12] See *Cesar C., supra* note 7.

result, she sought DNA testing to confirm her allegations. However, the Legislature has established that a properly executed acknowledgment of paternity cannot be set aside merely by DNA testing which later shows the identified individual is not the child's biological father.[13] While § 43-1412.01 provides that "[a]n individual may file a complaint for relief and the court may set aside a final judgment . . . or any other legal determination of paternity if a scientifically reliable genetic test . . . establishes the exclusion of the individual named as a father in the legal determination," it further clarifies that "[a] court shall not grant relief from determination of paternity if the individual named as father . . . completed a notarized acknowledgment of paternity . . . ." We have found that this provision provides further support for the conclusion that an acknowledgment legally establishes paternity and grants the individual named as father the legal status of a parent to the child regardless of genetic factors.[14] Because Tyler's acknowledgment remained in full force and effect and established his paternity of J.F. regardless of genetic factors, the trial court had no basis to order the DNA testing.

That is not to say an acknowledgment cannot be challenged and set aside, but the grounds for doing so are limited. Section 43-1409 explains that a properly executed acknowledgment "may be challenged only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon the challenger." Therefore, under the statutory scheme, before Sara could challenge paternity and subject Tyler to genetic testing, she needed to overcome the acknowledgment establishing Tyler was J.F.'s legal father by showing fraud, duress, or material mistake.[15]

Following the inappropriately ordered DNA test, Sara amended her answer and counterclaim to seek to set aside

---

[13] See, Neb. Rev. Stat. § 43-1412.01 (Reissue 2016); *Cesar C., supra* note 7.

[14] *In re Adoption of Jaelyn B., supra* note 7.

[15] See, *id.*; *Cesar C., supra* note 7.

the acknowledgment of paternity. Sara claimed both parties thereto had been under a material mistake of fact due to her being informed of an "erroneous due date by her treating physician." Sara specifically alleged that her projected due date was August 11, 2008, from which she believed Tyler was the father based upon a 9-month gestation period, but that this due date was incorrect and that labor was induced several days earlier.

In its order declining to set aside the acknowledgment, the court correctly considered the issue without concern to the results of the DNA test. The court found that there was clear evidence Sara knew of the possibility Tyler was not the father during and following pregnancy and that even though Tyler was under the mistaken belief he was J.F.'s biological father, it was Sara's burden as the challenger to show a material mistake on her part, which she did not. Because the court declined to set the acknowledgment aside, it remains in full force and effect.

### GEOFFREY'S DETERMINATION OF PATERNITY

Geoffrey's complaint to establish his paternity of J.F. alleges that Geoffrey did not know he was J.F.'s father until Sara informed him that DNA testing excluded Tyler as J.F.'s biological father. Regardless of whether that allegation is supported by the record, as noted above, the court had no basis to order this test, due to the application of the acknowledgment of paternity.[16]

Further, Geoffrey's complaint fails to move for Tyler's acknowledgment of paternity to be set aside. Instead, Geoffrey argues, and the district court agreed, that a determination that Tyler has paternity of J.F. is of no consequence when determining whether Geoffrey has paternity of J.F. However, this proposition is at odds with Nebraska's paternity and related statutes and the Nebraska Child Support Guidelines as currently constructed.

---

[16] See *id.*

[11-13] We have recognized that paternity proceedings are purely statutory and that because the statutes regarding paternity proceedings modify the common law, they must be strictly construed.[17] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[18] Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[19]

Actions to determine paternity and parental support are governed by Neb. Rev. Stat. §§ 43-1401 through 43-1418 (Reissue 2016 & Cum. Supp. 2018). Throughout these statutes, the Legislature has used language which recognizes the possibility of only a singular paternity determination. For example, § 43-1402 describes "[t]he father of a child whose paternity is established," "[t]he mother of a child," and "each parent" in explaining support liability for a child. (Emphasis supplied.) Section 43-1403 describes possible county obligations of support "[i]n case of the neglect or inability of the parents, or either of them, to support a child . . . ." (Emphasis supplied.) Section 43-1404 designates the "liability of the father or mother of a child for its support" in explaining the discharge of support obligations. (Emphasis supplied.) Section 43-1405 uses the singular "the father" language several times in describing the discharge of support liability by settlement. (Emphasis supplied.) Section 43-1407 identifies "[t]he father of a child" in its explanation of liability for birth, pregnancy, and medical expenses. (Emphasis supplied.) Section 43-1410 explains, "Any judicially approved settlement or order of support made

---

[17] *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014).

[18] *In re Application No. OP-0003, supra* note 5.

[19] *Id.*

by a court having jurisdiction in the premises shall be binding on the legal representatives of *the father* or mother in the event of his or her death . . . ." (Emphasis supplied.) Section 43-1412(3), in explaining a court's continued jurisdiction of a paternity action to order support and court costs, states:

> If a judgment is entered under this section declaring the alleged father to be *the father* of the child, the court shall retain jurisdiction of the cause and enter such order of support, including the amount, if any, of any court costs and attorney's fees which the court in its discretion deems appropriate to be paid by *the father* . . . .

(Emphasis supplied.)

Statutes under Nebraska's Parenting Act[20] use similar limiting language. Section 43-2922(12) describes the existence of only two parents and defines "[j]oint physical custody" as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by *both parents* over the child for significant periods of time." (Emphasis supplied.) This "both parents" language is used in other parts of the Parenting Act, including the following sections: § 43-2924(2), in describing the applicability of the Parenting Act for custody determinations; § 43-2929(4), in explaining that both parents continue to have parental rights regardless of a custody determination in a parenting plan unless the rights are terminated; and § 43-2937(4), in describing when court-ordered mediation or alternative dispute resolution is required under the Parenting Act. Relatedly, § 43-2930(1) lists permissible information a child information affidavit may include when certain circumstances are present, including "criminal no-contact orders against *either parent*." (Emphasis supplied.) The language of § 43-2932 considers the existence of only two parents in the requirements under subsection (1)(a)(iv) that a court develop

---

[20] See Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019).

a parenting plan if "a parent . . . has interfered persistently with *the other parent's* access to the child;" under subsection (1)(b)(iv) of additional permissible limitations of a parenting plan, including "[r]estraints on the parent from communication with or proximity to the *other parent* or the child;" and under subsection (3) that the "parent found to have engaged in the behavior . . . has the burden of proving" the rights granted under the parenting plan "will not endanger the child or the *other parent*." (Emphasis supplied.)

We are mindful that following the U.S. Supreme Court's decision in *Obergefell v. Hodges*,[21] our courts are now hearing cases involving two legal mothers or two legal fathers. But our current parentage statutes have not changed, and these statutes are still gender based, so the language of our opinion is necessarily gender based as well. In other words, Nebraska's statutory scheme on parentage accommodates only two parents and primarily refers to one mother and one father. Here, the trial judge recognized three legal parents (one mother and two fathers), and that is simply not suppported by Nebraska law.

The Nebraska Child Support Guidelines also use language which assumes the existence of only a singular paternity determination, including the identifiers "both parents," "either parent," and "both parties."[22] Though Nebraska's judicial branch has revised its child support guidelines to be gender neutral, even the revised guidelines still accommodate just two legal parents.

[14] In considering the plain language of our paternity and related statutes, the Legislature's use of the singular "the father" indicates an intention that there can only be one paternity designation at a time, and the use of "both parents,"

[21] *Obergefell v. Hodges*, ___ U.S. ___, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015).

[22] See, e.g., Neb. Ct. R. § 4-201; Neb. Ct. R. §§ 4-203, 4-204, 4-206, and 4-215 (rev. 2020); Neb. Ct. R. § 4-214 (rev. 2016).

"either parent," "either party," and "both parties" supports this reading. Accordingly, we hold that a previous paternity determination, including a properly executed and undisturbed acknowledgment, must be set aside before a third party's paternity may be considered.

To find that one paternity determination has no effect on subsequent claims of paternity would render our decision in *Cesar C. v. Alicia L.*[23] inconsequential. In *Cesar C.*, we determined that a mother's request for DNA testing of the acknowledged father to determine whether he was actually the child's biological father should have been denied by the trial court because the acknowledgment of paternity was undisturbed and properly executed. As such, there was already a determination of paternity of the child at issue and there could not be another action to determine paternity without first setting aside the acknowledgment.[24]

[15] Our holding in *Cesar C.* applies to the instant case because just like the mother in *Cesar C.*, Sara sought another paternity determination even though an acknowledgment remained applicable, the court failed to give adequate weight to the undisturbed acknowledgment and inappropriately ordered DNA testing for the purposes of establishing the child's paternity, and the DNA test established the legal father was not the child's biological father. Herein, Geoffrey then filed a complaint to establish his paternity based upon the DNA results communicated to him by Sara and did not seek to set aside the acknowledgment. If the paternity statutes allow for another party to establish simultaneous paternity without setting aside a properly executed acknowledgment of paternity, the DNA tests in *Cesar C.* and in this case would not be prohibited because they would provide a basis for a third party to seek such a simultaneous paternity ruling. However, in line with our opinion in *Cesar C.* and as analyzed above, the paternity

---

[23] *Cesar C., supra* note 7.

[24] *Id*.

statutes require that a party seeking to establish paternity must first set aside an existing determination.

Other courts have come to this same conclusion.[25] In *Barr v. Bartolo*,[26] the Pennsylvania Superior Court analyzed whether an undisturbed previous support order barred a subsequent determination of paternity in a third party. Under Pennsylvania law, the entry of a court order for support of a child necessarily determines the alleged father's paternity.[27] As such, the support order judicially determined paternity in the husband and the court held that the previous determination barred relitigation of paternity without striking that first determination.[28]

In *Sinicropi v. Mazurek*,[29] the Michigan Court of Appeals considered what effect an unrevoked acknowledgment of paternity would have on an action to establish paternity. The trial evidence indicated that the biological father was seeking to establish his paternity of the minor child after the legal father had previously executed an unrevoked acknowledgment of paternity.[30] In granting the biological father's complaint to establish paternity, the trial court effectively ruled that the child had two legal fathers.[31] On appeal, the appellate court reversed and held that an order of filiation cannot be entered if a proper acknowledgment of parentage was previously executed and has not been revoked.[32] The court further held that an unrevoked acknowledgment already legally established paternity and conferred the status of natural and legal father upon the man executing the acknowledgment, which in turn entitled him

---

[25] *Barr v. Bartolo*, 927 A.2d 635 (Pa. Super. 2007); *Sinicropi v. Mazurek*, 273 Mich. App. 149, 729 N.W.2d 256 (2006).

[26] *Barr, supra* note 25.

[27] *Id*.

[28] *Id*.

[29] *Sinicropi, supra* note 25.

[30] *Id.*

[31] *Id.*

[32] *Id.*

to seek custody or parenting time if desired and obligated him to pay support if appropriate.[33]

In accordance with all of the above, the district court committed plain error in considering Geoffrey's complaint to establish his paternity of J.F. when Tyler's acknowledgment remained in place and established Tyler as J.F.'s father.

## Geoffrey's Cross-Appeal

In his cross-appeal, Geoffrey acknowledges the possibility that the district court committed plain error in finding his paternity without seeking to set aside Tyler's acknowledgment of paternity. As such, Geoffrey assigns the district court erred in failing to set aside the acknowledgment. Geoffrey claims the court incorrectly limited its consideration of whether a material mistake of fact occurred to Sara's perspective, instead of considering it from his perspective.

We note that Geoffrey did not independently move the court to set aside Tyler's acknowledgment. Instead, his complaint to establish paternity merely referenced Sara's allegation that Tyler's belief that he was the biological father was based on a material mistake of fact. Specifically, Geoffrey alleged:

> Genetic testing was completed establishing that Tyler . . . is not the father of [J.F.] [Tyler's] belief that he was the father of [J.F.] was based on the representations of Sara . . . , and . . . said reliance was based on the material mistake of fact based on the representations of Sara . . . at the time [J.F.] was conceived and born. The presumption that . . . Tyler . . . is the father of [J.F.], through his signed Acknowledgment of Paternity, has been rebutted through genetic testing and the records of the Nebraska Department of Health and Human Services should be corrected.

As a result, we consider Sara's prayer in her amended answer that the district court rescind Tyler's acknowledgment

---

[33] *Id.*

of paternity. Specifically, in the "Affirmative Defenses" section of her amended answer, Sara alleges:

> [J.F.] was born at the Bryan LGH Medical Center East in August of 2008. [Sara] was initially informed of an erroneous due date by her treating physician. The initial due date was projected to be on August 11, 2008. Based on the due date provided to [Sara], she mistakenly believed that Tyler . . . was the father of [J.F.] based on a 9 month gestation period. However, the anticipated due date was incorrect and labor was induced [several days earlier]. Accordingly, the parties hereto were under a material mistake of fact as [to] the biological father of [J.F.]

Additionally, under a section titled "Counterclaim: Custody," Sara alleged: "The Acknowledgment of Paternity executed by [Tyler and Sara] herein was executed under a material mistake of fact precipitated by an inaccurate due date provided to [Sara]. To the extent the Acknowledgment of Paternity is rescinded the legal determination of paternity should be set aside."

[16] As explained above, in order to set aside an unrevoked acknowledgment, the moving party has the burden to show the acknowledgment was a result of fraud, duress, or material mistake.[34] Sara, as the challenging party, had the duty to show that the acknowledgment resulted from a material mistake as she claimed.[35] In our review, we therefore evaluate the district court's decision not to set aside the acknowledgment based upon Sara's allegation that there was a material mistake of fact in the execution of the acknowledgment by Tyler and Sara as the executing parties, and not from Geoffrey's perspective as a nonexecuting party.

In seeking to set aside Tyler's paternity, Sara alleged only that she was under a material mistake of fact that Tyler was the biological father because her treating physician projected her

---

[34] § 43-1409.

[35] See *id.*

due date to be on August 11, 2008, when J.F. was actually born several days earlier. Based upon this projected due date, Sara calculated a 9-month gestation period and allegedly believed Tyler was the biological father.

The record contradicts Sara's allegation that she was under the mistaken belief as to J.F.'s biological father because she was told this incorrect due-date projection. If Sara received an incorrect projection of her due date, the due date was no longer at issue when J.F. was born, as Sara herself indicated when she testified Tyler should have known he was not the biological father due to J.F.'s date of birth.

The record also demonstrates that Sara knew of the possibility Geoffrey was the biological father during her pregnancy. Sara contacted Geoffrey about this possibility during the pregnancy and again 8 to 9 months after J.F.'s birth. Sara testified that she always believed that Geoffrey, instead of Tyler, might be J.F.'s biological father. Geoffrey and Sara talked soon after J.F. was born about performing genetic testing to determine whether Geoffrey was the father, but neither took any further action.

[17,18] It is clear that Sara knew Geoffrey could be J.F.'s biological father, even after being told the projected due date, and she communicated such possibility to Geoffrey. Due to this known possibility, Sara had a duty to exercise reasonable diligence in the execution of the acknowledgment of Tyler's paternity to ensure that it was grounded in fact.[36] We have explained that reasonable diligence "'means appropriate action where there is some reason to awaken inquiry and direct diligence in a channel in which it will be successful.'"[37] However, there is no evidence in the record that Sara exercised such reasonable diligence beyond her communications

---

[36] See *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[37] *Id*. at 346, 808 N.W.2d at 881. See, also, *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994) (superseded by statute on other grounds as stated in *Alisha C., supra* note 36).

with Geoffrey. As such, the district court did not err in finding Sara failed to meet her burden and denying her motion to set aside Tyler's acknowledgment.

Considering all of the above, the district court's finding that Sara, and Geoffrey in support of Sara's motion, failed to show the alleged material mistake of fact is supported by the record. Accordingly, the district court's denial of Sara's motion to set aside Tyler's acknowledgment of his paternity of J.F. is affirmed.

## CONCLUSION

The district court did not err in finding that Sara failed to meet her burden to set aside the notarized acknowledgment of paternity executed by Tyler and Sara at the time of J.F.'s birth. Additionally, a previous paternity determination, including a properly executed and undisturbed acknowledgment of paternity, must be set aside before a third party's paternity may be considered. As a result, the district court committed plain error considering Geoffrey's paternity complaint while failing to give proper legal effect to Tyler's acknowledgment of paternity. Accordingly, we affirm the court's denial of Sara's counterclaim to set aside Tyler's acknowledgment of paternity; reverse the district court's award of joint legal and physical custody of J.F. to Sara, Tyler, and Geoffrey; and remand the cause for further proceedings.

Affirmed in part, and in part reversed and remanded for further proceedings.