Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/13/2020 08:07 AM CDT

- 956 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

State of Nebraska on behalf of Emery W., a minor
child, appellee, v. Michael W., defendant
and third-party plaintiff, appellant,
and Mallory B., third-party
defendant, appellee.

___ N.W.2d ___

Filed October 6, 2020.    No. A-20-007.

1. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Evidence: Appeal and Error.** In a de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Child Custody: Visitation.** The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody, and there exists a broad continuum of possible parenting time schedules that can be in a child's best interests.

5. **____: ____.** Where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

6. **Child Support: Rules of the Supreme Court.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.

- 957 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed in part as modified, and in part reversed and remanded with directions.

Linsey Moran Bryant, of Sidner Law, for appellant.

Avis R. Andrews for appellee Mallory B.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Michael W. appeals from the order of the district court for Dodge County, which modified a previous child support order in this paternity action and awarded custody and parenting time of his children with Mallory B. Michael assigns error to the court's characterization of the physical custody award as being an award of sole, rather than joint, physical custody; its calculation of child support based upon the sole physical custody calculation worksheet; and its failure to specifically terminate a prior award of cash medical support to Mallory. For the reasons set forth herein, we affirm in part as modified, and in part reverse and remand with directions.

## BACKGROUND

Michael and Mallory are the parents of Emery W., born in 2017. At some point, the State initiated a paternity action, which resulted in a stipulated child support order entered on February 7, 2018. The court found that Michael, who had signed a notarized acknowledgment of paternity, was Emery's father, and it ordered Michael to provide child support for her in the amount of $373 per month. Because neither party had dependent health or medical insurance available to them at a reasonable cost, the court ordered Michael to pay medical support of $32 per month.

Subsequent to the entry of that support order, the parties had another child, Elise W., born in 2018, which birth prompted the modification action at issue in this appeal. On

- 958 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

February 28, 2019, Michael filed a complaint to modify, alleging a substantial and material change of circumstances since the entry of the 2018 support order based on the birth of Elise. Michael also alleged that the parties had experienced a change in income such that application of the child support guidelines would result in a variation by 10 percent or more of the current child support obligation. Michael asked the court to award the parties temporary and permanent joint legal and physical custody of both children, establish parenting time, modify child support based on a joint custody calculation, order the parties to share in the cost of nonreimbursed medical expenses and childcare expenses, and allocate the federal income tax dependency exemption for the children.

Mallory filed an answer and a cross-complaint in which she sought a determination of Elise's paternity; sole legal and physical custody of the children or, alternatively, joint legal and sole physical custody; adoption of a parenting plan; a determination of Michael's obligation to pay child support and other expenses for the children; and allocation of the tax dependency exemption.

On April 11, 2019, the district court entered a temporary order awarding Michael and Mallory temporary joint legal custody and awarding Mallory temporary physical custody of the children. The court awarded Michael parenting time on alternating weekends from 6 p.m. on Thursday to 6 p.m. on Sunday and, during the weeks when Michael did not have weekend parenting time, from 6 p.m. on Wednesday to 6 p.m. on Thursday. The court ordered Michael to pay child support of $373 and ordered that childcare expenses be split with Michael's paying 63 percent and Mallory's paying 37 percent. With respect to the cash medical payment, the court stated that neither parent had dependent health or medical insurance available to them at a reasonable cost, and it ordered Michael to pay medical support of $38 per month, specifying that this was to supersede the previously ordered amount of $32.

Trial was held on October 30, 2019. The district court heard testimony from the parties and their mothers and received

- 959 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

various documentary exhibits, including the parties' proposed child support calculations, paystubs from both parties, a 2018 "Tax Return Transcript" for Michael, and information about Mallory's current health insurance coverage. In addition, the parties had entered into a partially mediated parenting plan which provided that they would share joint legal custody of the children.

Prior to the start of testimony, the parties had a discussion with the district court regarding medical insurance. Michael's attorney indicated that the State had been involved in the case previously "due to a Medicaid application," but because Mallory was currently providing private health insurance for the children, he asked the court to "incorporate that typical language that would reflect that" and to terminate Michael's prior obligation of paying "cash medical" support. Mallory's attorney confirmed that Mallory was carrying health insurance for the children but indicated that "there is still Medicaid as a secondary for the children."

At the time of trial, Mallory was 24 years old; Emery and Elise were 2 years old and 11 months old, respectively. Mallory was employed as a certified nursing assistant and medication aide at an assisted living facility, working 40 hours per week and earning $14.50 per hour.

Mallory testified about the parties' relationship and living arrangements. She indicated that they began dating in about 2013. At the time of Emery's birth in 2017, Mallory still lived with her parents (who divorced at some point not clear in the record). In July 2017, Mallory and Emery began living with Michael and his parents. They lived there until July 2018 (prior to Elise's birth in December). After Mallory's separation from Michael, she and Emery stayed briefly with her father and then moved in with her mother. According to Mallory, she tried to continue keeping Michael involved in the children's lives, but she indicated that the parties frequently argued. She also testified about having issues trusting Michael and his mother. At the time of the modification action, Mallory and the children lived in Fremont, Nebraska, with Mallory's mother

- 960 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

and siblings. She testified about her plans to move with the children (without her mother and siblings) to an apartment in Fremont with income-based rent in the near future. Michael continued to reside in Omaha, Nebraska, with his parents and brother, about 40 miles (or "20 to 30 minutes") away from where Mallory then lived.

When asked what kind of involvement Michael should have with the children, Mallory testified, "Enough involvement that routines aren't disrupted and school isn't disrupted and that they both know that he still cares." She noted that she had had visitation with her own father every other weekend and felt that such a parenting time schedule had still provided her with a positive connection with her father. Mallory testified that sole physical custody with her would be in the children's best interests. She requested a parenting time schedule very similar to that imposed in the temporary order, which she agreed had been working well for the children. Mallory testified that Michael had exercised all of his parenting time since entry of the temporary order, except on one occasion, although Michael's parents sometimes returned the children early if they had to do something when Michael was at work. She agreed that he is a good father and that the children appear to enjoy their time with him.

Mallory testified about various expenses and her current health insurance coverage. The childcare cost was $145 per week. Mallory has maintained insurance coverage through her employer for the children since July 2019. The cost per month to add the children to her insurance was $21.50 for dental, $82 for health, and $14.34 for vision. The children also still had Medicaid coverage. Mallory contributes to a 401K retirement plan, pays rent to her mother, pays car insurance, and contributes to the cost of groceries and other supplies for the children. The children also receive food from the "Women Infant Children's program," and they are involved in a low-income, family-based program called Sixpence, which provides certain supplies and can help children "reach their milestones" and get into an early learning program. According to Mallory, she

- 961 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

learned the month before trial that through the Sixpence program, she could enroll the children in early preschool. Mallory testified that she had informed Michael of Emery's eligibility to start preschool the following year during a parenting time exchange.

Mallory's mother affirmed Mallory's testimony about her current and previous living arrangements. She indicated that Mallory had talked about getting her own place to live, but she was unaware of any formal plans Mallory might have to move to an apartment. Mallory's mother testified that Mallory contributes financially to their current household by paying rent of $200 and helping with the cost of groceries. In addition to Mallory's parenting the children when she is home, Mallory also performs various household chores. Mallory's mother provides some childcare assistance because Mallory has to be at work at 5:30 a.m. Accordingly, Mallory's mother wakes the children, dresses them, and takes them to daycare on days when Mallory works and the children do not go to Michael's. Mallory's mother described Mallory as a very good parent and indicated that she had no concerns about Mallory's parenting ability.

Michael was 25 years old at the time of trial and employed by a convenience store chain, earning $12.50 per hour. Generally, he works 40 hours per week from 2 to 11 p.m. with Thursdays and either Mondays or Tuesdays off. Michael had lived with his parents for approximately 3 years because of his financial circumstances, but he was current on his child support and cash medical support obligations and provided the children with food, formula, clothes, and anything else they needed during his parenting time.

Michael testified about the parties' success in coparenting during the time they lived together. However, the parties were "fighting a lot" when they separated in July 2018, and Michael stated he did not want Emery to be around this behavior. Michael testified about his involvement with the children after the parties' separation and before and after Elise's birth. He testified that he ended up filing the modification action

- 962 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

due to the limitations placed on his parenting time despite his efforts to resolve issues with Mallory. Michael also testified about his parenting time with the children after entry of the temporary order. When the children are with him, he changes them, clothes them, feeds them, and plays with them. He has attended appointments for the children about which Mallory has informed him, although there were some she did not tell him about. He agreed that Mallory is a good mother.

Michael confirmed that he agreed to the joint legal custody as mediated by the parties, and he asked the district court to award joint physical custody as well, with a week-on-week-off parenting time schedule. Michael was willing for the children to attend school in Fremont, as long as one of the parties continued to live there. He indicated his willingness to transport Emery from Omaha to Fremont during his parenting time once she started preschool and to move to Fremont if necessary. If Michael had to work during his parenting time, either his parents or a babysitter who came to the house would provide childcare. Michael explained that in the event of a week-on-week-off parenting time schedule, he would try to switch to the day shift and would hire a babysitter to provide in-home childcare during the day. Michael indicated that the commute from Omaha to Fremont was not an impediment to exercising parenting time. He testified that he was willing to make sacrifices to spend more time with the children. Finally, Michael testified that he believed he could communicate with Mallory and that he wanted to be involved in decisions regarding the children.

On cross-examination, Michael admitted that he had not yet made significant efforts toward finding a residence and employment closer to Mallory or changing his work schedule at his current employment, but he felt he could make joint custody work based on his current circumstances. If he moved, he would need a roommate, and he testified about his intentions in that regard. He expressed that he had not been aware until trial that Mallory intended to enroll Emery in preschool in Fremont. Michael testified that this knowledge did not

- 963 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

affect his ability to "do joint custody from Omaha," that he intended to move to Fremont prior to when Emery started preschool, and that he would do whatever it took to get Emery where she needed to go. Michael also expressed his interest in being involved in the Sixpence program in which Emery was enrolled and his hope that Mallory would discuss such decisions with him in the future.

Michael's mother confirmed that he lived in Omaha with her, his father, and his brother. She indicated that while Michael did not have sufficient funds to live on his own at that time, he had talked about moving to Fremont on several occasions. Michael's parents provide childcare for the children while Michael works and assist him with transporting the children for parenting time exchanges when needed. Michael's mother enjoys her time with the children, and she has also provided childcare for Mallory on occasion. Michael's mother testified about Michael's care for the children when he is home during his parenting time, and she described him as an engaged and devoted parent.

At the close of trial, the district court made oral findings from the bench, and it subsequently entered an order memorializing its findings. The court found that Michael was Elise's father, that a material change in circumstances warranting modification of the previous support order existed, and that orders of custody and parenting time were in the children's best interests. The court awarded the parties joint legal custody and designated Mallory as the "[t]ie breaker" in the event the parties were unable to agree on major decisions for the children after a good faith discussion. It awarded physical custody to Mallory, subject to the parenting plan adopted by the court. The parenting plan provided for Michael's parenting time, alternating between from 6 p.m. on Tuesday until 6 p.m. on Sunday during one week and from 6 p.m. on Tuesday until 6 p.m. on Thursday during the following week, with the parties to share transportation. The parenting plan also provided that the parties were to take vacation during their regular parenting

- 964 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

time and established holiday parenting time. The court ordered Michael to pay child support of $646 per month for two children and $467 for one child; it also specified division of the income tax dependency exemption. The court ordered Mallory to provide health insurance through her employment as long as it was available at a reasonable cost, and it ordered Michael to pay 52 percent of nonreimbursed health care expenses for the children after the first $480 per child had been paid by Mallory. It also ordered Michael to pay 52 percent of childcare expenses. In its written order, the court stated that all other terms of the previous support order not in conflict with the modification order were to remain in full force and effect.

## ASSIGNMENTS OF ERROR

Michael asserts that the district court abused its discretion in (1) characterizing the physical custody of the children as sole physical custody when custody was effectively joint physical custody, (2) calculating child support based upon the sole physical custody calculation worksheet, and (3) failing to terminate cash medical support.

## STANDARD OF REVIEW

[1,2] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State on behalf of Ryley G. v. Ryan G.*, 306 Neb. 63, 943 N.W.2d 709 (2020).

[3] In a de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

- 965 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

ANALYSIS

*Physical Custody.*

Michael asserts that the district court abused its discretion in characterizing the physical custody of the children as sole physical custody when custody was effectively joint physical custody. During its statements from the bench at the close of trial, the court noted that the parties were both living with their parents. It stated:

> This should be a case that moves forward to shared custody, 50/50. You're not there yet so I cannot wish and hope that that's going to happen. It should happen. It would be reasonable to happen. The father needs to get on his own. He needs to move to Fremont like he testified he's going to, get a better paying job to support these children. Mother needs to do the same, get out on her own, support these children. So, until that happens, you're not in the position for a split custody. That should happen. That should be a goal, and I hope it does happen.

Despite expressing these sentiments and awarding Mallory "sole physical custody," the court awarded Michael parenting time every other week from 6 p.m. on Tuesday until 6 p.m. on Sunday, and in the alternating weeks from 6 p.m. on Tuesday until 6 p.m. on Thursday. The court also confirmed that the award was for "seven overnights out of 14." We agree with Michael's assertion that this was effectively an award of joint physical custody, and we modify the court's order accordingly.

[4] "Physical custody" is defined by the Parenting Act as "authority and responsibility regarding the child's place of residence and the exertion of continuous parenting time for significant periods of time." Neb. Rev. Stat. § 43-2922(20) (Supp. 2019). "Joint physical custody" is defined as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time." § 43-2922(12). And, "[p]arenting time" is defined

- 966 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

as "communication or time spent between the child and parent." § 43-2922(19). The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody, and there exists a broad continuum of possible parenting time schedules that can be in a child's best interests. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[5] In *State on behalf of Kaaden S.*, the Nebraska Supreme Court found that an alternating week-on-week-off parenting time schedule requires the child to spend roughly the same amount of time at each parent's residence and allows both parents to exert continuous blocks of parenting time for significant periods of time and, thus, meets the statutory definition of joint physical custody. The court held that where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement. *Id.*

Here, the district court awarded parenting time on a rotating schedule, which results in each parent having seven overnights with the children in every 14-day period. While the blocks of continuous parenting time are not as extensive as that in a week-on-week-off schedule, they do allow each parent to have continuous blocks of parenting time for significant periods. We conclude that the parenting plan adopted by the court effectively established a joint physical custody arrangement. As stated by the Nebraska Supreme Court in *State on behalf of Kaaden S.*, "[I]t is the trial court's allocation of parenting time that drives the physical custody label, not the other way around." 303 Neb. at 948, 932 N.W.2d at 705. Accordingly, we modify the court's December 17, 2019, order and the parenting plan to reflect an award of joint physical custody.

*Child Support Calculation.*

Michael asserts that the district court abused its discretion in calculating child support based upon the sole physical custody calculation worksheet, and he argues that the court should

- 967 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

have used worksheet 3, the joint physical custody worksheet. Given our modification of the December 2019 order and parenting plan to reflect an award of joint physical custody, and in light of the amount of time the children are in each parent's physical custody, we agree.

[6] In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Lasu v. Lasu*, 28 Neb. App. 478, 944 N.W.2d 773 (2020). Neb. Ct. R. § 4-212 (rev. 2011) of the child support guidelines sets forth the application of worksheet 3 as follows:

> When a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year, it is a rebuttable presumption that support shall be calculated using worksheet 3. When a specific provision for joint physical custody is ordered and one party's parenting time is 109 to 142 days per year, the use of worksheet 3 to calculate support is at the discretion of the court. . . . For purposes of these guidelines, a "day" shall be generally defined as including an overnight period.

Michael notes, "A calculation of [his] parenting time for calendar year 2020, shows that he will have overnight [parenting time] on 183 days, and Mallory with 182 days." Brief for appellant at 18. He also argues that there was no evidence presented that would rebut the presumptive use of worksheet 3, given the amount of parenting time awarded to each party. While the court made certain comments from the bench, expressing its belief that the parties were not ready for "split custody," it awarded the parties essentially equal parenting time. We interpret the court's comments more as the court's assessment that the parties were not ready for a week-on-week-off parenting time schedule, and we do not see anything in the record to rebut the presumption that worksheet 3 should be used in this case. The court abused its discretion in failing to do so. Accordingly, we reverse the court's child support order and remand the cause for recalculation using the joint physical custody worksheet 3.

- 968 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

*Cash Medical Support.*

Michael asserts that the district court abused its discretion in failing to terminate cash medical support. In the original February 2018 support order, the court ordered Michael to pay cash medical support of $32 per month, since neither party had insurance available to them at a reasonable cost at that time. The parties still did not have insurance available at the time of the April 2019 temporary order, and the court then ordered Michael to pay cash medical support of $38 per month. The evidence at the modification trial showed that Mallory had been providing medical, dental, and vision insurance for the children through her employer since July 2019; the children were also still covered under Medicaid. In its December 2019 final order, the court ordered Mallory to maintain health insurance for the children, but it did not specifically address elimination of the prior award of cash medical support and did not include an order of cash medical support. The order provided, however, that all other terms of the previous support order not in conflict with the modification order were to remain in full force and effect.

The award of cash medical support was clearly based on the fact that neither party had health insurance available at the time of either the original 2018 support order or the April 2019 temporary order. By the time of the modification trial, Mallory had obtained health insurance for the children, and she was ordered to maintain that insurance. Thus, an award of cash medical support was inconsistent with the previous support order. Therefore, we modify the language of the December 2019 order to eliminate Michael's obligation to pay cash medical support retroactive to the date of the December 2019 final order.

## CONCLUSION

Because the parenting plan adopted by the district court effectively established a joint physical custody arrangement, we modify the language of the court's December 2019 order

- 969 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF EMERY W. v. MICHAEL W.
Cite as 28 Neb. App. 956

and the parenting plan to reflect an award of joint physical custody. We reverse the court's child support order and remand the cause for recalculation using the joint physical custody worksheet 3. Finally, we modify the language of the December 2019 order to eliminate Michael's obligation to pay cash medical support retroactive to the date of the December 2019 order as indicated above.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.